UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PRIME THERAPEUTICS LLC, | Civil Action No.: 22-mc-35 |
| Movant, | |
| v. | **PRIME THERAPEUTICS LLC'S MEMORANDUM OF LAW SUPPORTING MOTION TO QUASH OR MODIFY SUBPOENA** |
| CVS PHARMACY, INC. and CVS HEALTH CORPORATION, | |
| Respondents. | |

## **INTRODUCTION**

Under Federal Rule of Civil Procedure 45(d), a party serving a subpoena on a non-party is obligated to avoid imposing an undue burden on the non-party, and this Court is obligated to quash or modify any subpoena that imposes such a burden. Over the past three months, Prime Therapeutics LLC ("Prime") has engaged in herculean efforts to narrow the scope of an expansive subpoena served on Prime by CVS Pharmacy, Inc. and CVS Health Corporation (collectively, "CVS") related to a lawsuit filed against CVS in Rhode Island federal court. Prime is not a party to that lawsuit. To date, Prime incurred more than $30,000 in fees and costs related to CVS's subpoena and produced hundreds of pages of documents. Unsatisfied, CVS has now asked Prime to review an additional ***64,259*** documents of dubious relevance—a project that will cost an ***additional $100,000***, if not more. The burden that CVS asks Prime to shoulder in responding to its subpoena is undue. This Court should accordingly quash part of

the CVS subpoena and order CVS to pay all future costs and fees incurred by Prime complying with the subpoena, including the costs and fees associated with this motion.

## BACKGROUND

Prime is a pharmacy benefit manager ("PBM"). Prime's role involves, among other things, serving as an intermediary between health insurance plans and pharmacies. On March 1, 2022, Prime was served with a document subpoena related to a set of consolidated cases pending in the United States District Court for the District of Rhode Island (the "Rhode Island Action"). *See* Declaration of Virginia McCalmont ("McCalmont Decl.") ¶ 3 & Ex. A. The subpoena was issued by the defendants in those cases, CVS. *See id.*, Ex. A at 1. The plaintiffs in the Rhode Island Action are health insurance plans, some of which are clients of Prime's and some of which are part owners of Prime. *See id.* at 8.[1] Prime is not a party to the Rhode Island Action.

---

[1] As Prime's website notes, Prime has a "unique" model wherein it is owned by a group of health insurance plans that are also some of Prime's clients. *See* Our History, *available at* https://www.primetherapeutics.com/about/our-history/ (last visited June 9, 2022). Prime's model allows it to "develop[] and deliver[] data analytics and drug management solutions that reduce the total cost of care." *See id.*

Prime's description of its ownership structure and services on its publicly-available website is subject to judicial notice. *Cf. Bauer v. AGA Serv. Co.*, 25 F.4th 587, 590-91 (8th Cir. 2022) (in the context of a Rule 12(b)(6) motion to dismiss, noting that "an item may be judicially noticed when it 'is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'" (quoting Fed. R. Evid. 201(b)(2)).

CVS's subpoena to Prime is expansive. The subpoena includes 18 requests, some of which have subparts, and provides a "relevant time period" of "September 1, 2006 to the present"—i.e., sixteen years. *See* McCalmont Decl. Ex. A, at 12. On March 15, 2022 Prime timely served objections to CVS's subpoena. *See id.*, Ex. B. Prime's objections and responses set off a nearly three-month negotiation process between Prime's counsel and CVS's counsel about the subpoena. Prime's counsel met with CVS's counsel about the subpoena at least seven times (on March 21, March 30, April 8, May 10, May 19, May 26, and June 9), and engaged in additional dialogue by email throughout this period. *See* McCalmont Decl. ¶ 4. Prime has been completely transparent with CVS about the collection and review process it is undertaking, including providing the names of custodians from whom documents would be collected and the search terms that would be applied to collected documents. *Id.* ¶ 5. Prime was also responsive every time that CVS inquired about additional custodians and search terms. *Id.* ¶ 6. From the very beginning of the negotiation process, however, Prime made clear to CVS that it believed the subpoena was overbroad and unduly burdensome, and that Prime would likely need CVS to pay some of the costs of compliance to facilitate the scope of review that CVS was requesting. *See id.* ¶ 7 & Ex. C. Prime renewed its request that CVS pay some of the costs of compliance multiple times throughout the negotiation process. *See, e.g., id.*, Ex. D.

3

While negotiations related to search terms and custodians were ongoing, Prime made every effort to comply with the parts of CVS's subpoena that were not overbroad and unduly burdensome. Prime's efforts culminated in the production of more than 500 pages of documents responsive to six of CVS's 18 requests on May 20, 2022. *See id.* Ex. E. Prime is continuing to collect and review additional documents that are responsive to CVS's subpoena and not part of the expansive search term/review process that imposes an undue burden on Prime. *See id.* ¶ 8. Prime will continue to make subsequent productions as necessary. *See id.* ¶ 9.

Just last week—on June 2, 2022—after Prime made many rounds of tweaks to the custodian list and search terms at CVS's behest, CVS and Prime reached the end of their negotiations on those topics. *See id.* ¶ 10. CVS has asked Prime to collect documents from 11 custodians and run 6 far-ranging search terms against those documents. *See id.* ¶ 11. The search terms that CVS is requesting, when applied against the custodians from whom CVS has asked Prime to collect documents, yields a set of **64,259** additional documents that would need to be reviewed by Prime. *See id.* ¶ 12. Separately, Prime has also collected an additional 1,920 documents containing highly confidential business information that are responsive to one of CVS's requests (Request 2), which would also need to be reviewed if that request is not quashed. *See id.* ¶ 13.

Prime has engaged a vendor to assist with the process of responding to CVS's subpoena, and the vendor estimates that review of this volume of documents will take

a team of seven reviewing attorneys 3-4 weeks to complete, at a cost of between $60,000 and $75,000. *See id.* ¶ 14. Those costs do not include the costs of undersigned counsel overseeing the review process, which are also likely to amount to tens of thousands of dollars, if not more. *See id.* ¶ 15. Because the documents to be reviewed are sensitive, potentially including (among other things), (1) the protected health information ("PHI") of individual health plan members; (2) highly confidential and proprietary business information; and (3) contracts that may require Prime to give notice to counterparties before producing them, the review process for the document set that Prime has collected will need to be painstaking. *See id.* ¶ 16. Prime has already incurred more than $30,000 in fees preparing objections and responses to the CVS subpoena, making a first production of documents, and engaging in negotiations about the balance of CVS's requests. *See id.* ¶ 17. The review process that CVS now asks Prime to undertake would result in *additional* fees and expenses of well over $100,000. *See id.* ¶ 18.

This motion to quash or modify follows.

## ARGUMENT

**I.    The CVS subpoena imposes an undue burden on Prime and should be quashed or modified.**

Because Prime is not a party to the Rhode Island Action, Fed. R. Civ. P. 45(d)(1) is clear: CVS "*must* take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* (emphasis added). By asking Prime to undertake review of tens of thousands of documents at an out-of-pocket expense of

5

well over $100,000, CVS has failed to do so. Moreover, because CVS's subpoena "subjects [Prime] to undue burden," this Court "*must* quash or modify" it—or, in the alternative, "order appearance or production under specified conditions," such as "ensur[ing] that the subpoenaed person will be reasonably compensated." *Id.* at 45(d)(3)(A) & (C) (emphasis added). In addition, this Court "*may* . . . quash or modify [a] subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." *Id.* at 45(d)(3)(B).

To ensure that Prime is not subjected to undue burden and that its most proprietary business information is protected, this Court should issue an Order (1) quashing Request 2 of the CVS subpoena; and (2) shifting the cost of the custodian/search term review process that CVS has demanded from Prime to CVS. Additional detail on each of these requests follows.

      A.    <u>Request 2 of the CVS subpoena should be quashed.</u>

Rule 45(d)(3)(B)(i) expressly permits this Court to "quash or modify [a] subpoena" that requires "disclosing a trade secret or other confidential research, development, or commercial information." Federal courts applying this provision have noted that "[c]onfidential commercial information, within the meaning of Fed. R. Civ. P. 45(d)(3)(B)(i) . . . is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when released." *In re Boston Sci. Corp. Pelvic*

*Repair Sys. Prod. Liab. Litig.*, MDL No. 2326, 2014 WL 1329944, at *2 (S.D.W. Va. Mar. 31, 2014).

Request 2 of the CVS subpoena demands the production of "Each response from You to any request for proposal from a Plaintiff concerning a contract for pharmacy benefit management services during the Relevant Time Period." McCalmont Decl. Ex. A, at 12. The documents that CVS seeks through this Request contain Prime's most confidential and proprietary information. Prime's responses to requests for proposals ("RFPs") are elaborate documents that outline Prime's business model, pricing strategies, and other details about what gives Prime an edge in a crowded PBM marketplace. Prime takes many steps to ensure that this information remains confidential, and releasing it to anyone would be damaging. Releasing this information to *CVS*—which owns one of Prime's direct competitors, PBM CVS Caremark—would be devastating.

Moreover, Prime's production of the highly confidential and proprietary information contained in its RFP documents is unnecessary for two separate reasons. *First*, the overwhelming majority of Prime's RFP documents are irrelevant to the issues presented in the Rhode Island Action. CVS has explained to Prime that it wants Prime's RFP documents so that it can assess whether Prime was engaged in dialogue with health plans about usual and customary prices and/or pharmacy discount programs as part of its RFP submissions. To assess whether the 1,920 documents that Prime has collected related to Request 2 contain relevant information, Prime ran the

7

search terms CVS has asked for against the document set, which generated a subset of only 236 documents. McCalmont Decl. ¶ 19. As discussed in more detail below, even the best usual and customary ("U&C")-related search terms generate many false positives, so it is likely that the number of Prime's RFP documents that actually contain relevant information is even smaller. Moreover, a preliminary sampling indicates that within even that narrow subset of documents, the relevant information contained in any one document is dwarfed by the amount of irrelevant information contained in that document. *Id.* ¶ 20. Prime should not be forced to turn over thousands of documents containing its most sensitive commercial information when the upside for CVS is almost certainly going to be no more than a handful of pages of potential relevance.

*Second*, to the extent the information that CVS seeks in Request 2 is essential to its claims and defenses, CVS can get that information from the health plans that are parties to the Rhode Island Action. Request 2 specifically calls for Prime's "*response to any request for proposal from a Plaintiff.*" McCalmont Decl. Ex. A, at 12 (emphasis added). There is simply no reason to force Prime to undertake the burden of reviewing and producing information that is equally available from a party to the Rhode Island Action. Or put another way, because the information CVS seeks in Request 2 is available from the plaintiffs to the Rhode Island Action, CVS has not (and cannot) "show[] a substantial need for the testimony or material that cannot be

8

otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(C)(i). As a result, there is no need for this Court to order production of the requested materials.

For the foregoing reasons, Prime asks that this Court quash Request 2 of the CVS subpoena. In the alternative, Prime asks that this Court only require it to review the limited subset of 236 documents that contain the search terms that CVS has asked Prime to run, and further to permit Prime to redact irrelevant and sensitive commercial information from those documents prior to production.

B. <u>CVS should be ordered to pay the costs of Prime's compliance with the search-term-driven review process that CVS has demanded.</u>

CVS should also be ordered to pay the costs associated with Prime's review of the 64,259 documents that have been generated by Prime's application of the search terms that CVS has asked for to documents collected from the custodians that CVS has specified. There are multiple ways that CVS could narrow its requests to reduce the number of documents that Prime would need to review, but it has indicated it will not do so. For example, CVS has not offered to narrow the "relevant time period" set forth in the subpoena, which is "September 1, 2006 to present"—a period of *sixteen years*. McCalmont Decl. Ex. A at 12. In addition, CVS has declined to limit its requests to documents that relate specifically to CVS, pressing instead for documents about Prime's interactions with *all other pharmacies*—even those that are not parties to the Rhode Island Action. *See id.* ¶ 21; *see also id.* Ex. F at 1 (CVS's counsel providing the final search terms that it is requesting, including multiple search terms related to other pharmacies' discount programs). Finally, the requests themselves are

9

expansive, asking (among other things) for "*All* Communications" and "*All* Documents" on far-ranging topics related to (among other things) U&C pricing and pharmacy discount programs. *See, e.g.*, McCalmont Decl. Ex. A at 12-13 (Requests 4, 10 & 11) (emphasis added).

Prime has undertaken preliminary sampling of the documents generated by the search terms that CVS has asked for, and here again Prime has found that the overwhelming majority of those 64,259 documents are likely to be irrelevant and nonresponsive. In fact, an initial sample exercise revealed that *less than 5%* of the documents in the set are likely to be responsive. McCalmont Decl. ¶ 24. The reason is that the heart of the Rhode Island Action, as Prime understands it, is about usual and customary pricing. But "usual and customary price" is a concept used daily in Prime's business; in fact, a drug's "usual and customary price" is reported as part of every single one of the pharmacy reimbursement claims that Prime adjudicates. Moreover, the supplemental terms that CVS wants to use to narrow down the document set—things like discount and program and price match—are also general terms used regularly in Prime's day-to-day work. CVS has exacerbated the problems caused by these general search terms by resisting Prime's efforts to narrow the search in other ways. As a result, the document set that CVS is asking Prime to review is one in which more than 95% of the documents returned appear to be false positives.

The unreasonableness of the review process that CVS has demanded Prime undertake is underscored by the fact that this review process is significantly more

burdensome than the reviews that Prime has conducted in response to other third-party subpoenas from other U&C-related litigation.[2] For example, in late 2019 and early 2020 Prime received three third-party subpoenas in *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 4:18-cv-00673 (N.D. Okla.). Prime negotiated a response to those subpoenas that principally required Prime to collect documents from four custodians, apply one search term to the collected documents, and review slightly more than 5,000 documents generated by that search. McCalmont Decl. ¶ 22. More recently, Prime received a third-party subpoena in *Envolve Pharmacy Solutions Inc. v. Rite Aid Headquarters Corp.*, No. N19C-12-214 (Del. Super. Ct.). There too, Prime was able to negotiate a response to the subpoena that principally requires Prime to collect documents from six custodians, apply one search term to the collected documents, and review slightly more than 28,000 documents generated by that search. McCalmont Decl. ¶ 23. In contrast to the *Strauser* and *Rite Aid* parties, CVS asks Prime to collect documents from 2-3 times the number of custodians, apply 6 times the number of search terms, and review a resulting set of documents that is nearly three times (or more) larger than any other set of documents Prime has reviewed in response to a U&C-related subpoena to date.

---

[2] In another telling point of comparison, Caremark—the PBM that is owned by CVS—argued in response to a subpoena in another pending U&C-related lawsuit that reviewing just **3,156** documents would be "unduly burdensome and not proportional to the needs of the case." McCalmont Decl. Ex. G at 2. That argument was made on Caremark's behalf by Grant Geyerman, the same lawyer who represents CVS here. *Compare id.* at 2 n.1 (supporting declaration submitted by Grant Geyerman), *with* McCalmont Decl. Ex. A at 1 (subpoena to Prime issued by Grant Geyerman).

Courts in this District have found that subpoenas, like the CVS subpoena, that will require nonparties to spend hundreds of hours and tens of thousands of dollars reviewing irrelevant documents are unduly burdensome. For example, in *Neo Ivy Capital Management LLC v. Savvysherpa LLC*, this Court found that a third-party subpoena request that would "take approximately 485 hours of attorney time at an approximate cost of $110,000" was "overbroad . . . and will impose an undue burden on [the third party] to fully respond." No. 18-mc-0094 (SRN/DTS), 2019 WL 1435058, at *4 (D. Minn. Mar. 8, 2019), *report & recommendation adopted*, 2019 WL 1430156 (D. Minn. Mar. 29, 2019). Moreover, courts in this Circuit routinely find that the application of Rule 45's cost-shifting provision is an effective way to mitigate the undue burden that expansive subpoenas impose on third parties like Prime. For example, in *Rochester Drug Co-Operative v. Mylan Inc.*, this Court ordered a party issuing a subpoena to cover "80% of the costs to recover relevant and proportional materials contained in" one storage system, and "20% of the costs of producing" materials contained in another storage system. No. 22-MC-0007 (ECT/JFD), 2022 WL 1598377, at *12 (D. Minn. May 20, 2022). Other cases are in accord. *See, e.g.*, *West Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-cv-1445 (DSD/ECW), 2019 WL 8014512, at *6 (D. Minn. Nov. 22, 2019) ("West and ROSS shall share equally the costs of processing the Slack communications, including extracting, processing for review, de-duplicating, running search terms, and converting the results to a producible format for West."); *The Hunte Corp. v. Martinelli*, No. 10-9005, 2010 WL 4813849, at *2 (W.D.

Mo. Nov. 19, 2010) ("[T]he Court finds it appropriate to shift all reasonable and necessary costs Hunte incurs in complying with the subpoena to Plaintiffs."), *aff'd*, 446 F. App'x 818 (8th Cir. 2011) (per curiam).

Prime has made every effort to negotiate with CVS to lessen the burden imposed on Prime, a non-party, by the expansive subpoena that CVS has served. Prime has already incurred more than $30,000 in fees related to those negotiations, as well as the time it has spent reviewing and producing hundreds of pages of documents in response to the parts of CVS's subpoena that were appropriately limited. CVS's demand that Prime spend an additional amount in excess of $100,000 to review an additional 64,259 documents is unreasonable and unduly burdensome. This Court can and should order CVS to bear the costs of Prime's additional search and review efforts.

## II.     CVS should be ordered to pay the costs associated with this motion.

In addition to ordering CVS to pay the costs of Prime's additional search and review efforts, this Court should award Prime its costs and fees associated with this motion to quash or modify. Fed. R. Civ. P. 45(d)(1) provides that it is the burden of the "party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." If that party or attorney fails to do so, "[t]he court for the district where compliance is required *must* enforce this duty and impose an appropriate

sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added).

As set forth at length above, the subpoena that CVS has served on Prime is unduly burdensome. Prime's efforts to lessen the burden associated with compliance have been rebuffed by CVS. This Court accordingly should award Prime its costs and fees associated with this motion seeking relief from the Court.

## CONCLUSION

For the foregoing reasons, Prime respectfully asks that this Court enter an Order (1) quashing Request 2 of the CVS subpoena, (2) ordering CVS to pay the costs and fees associated with further searches and reviews related to the CVS subpoena, and (3) awarding Prime its costs and fees incurred bringing this motion.

Dated: June 9, 2022                Respectfully submitted,

s/ *Virginia R. McCalmont*
Robert J. Gilbertson  (# 22361X)
Virginia R. McCalmont (#399496)
FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP
Capella Tower, Suite 1750
225 South Sixth Street
Minneapolis, MN  55402
bgilbertson@forsgrenfisher.com
vmccalmont@forsgrenfisher.com
(612) 474-3300

*Counsel for Prime Therapeutics LLC*