# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| PRIME THERAPEUTICS LLC, | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | No. 22-mc-35-WMW-JFD |
| | ) | |
| CVS HEALTH CORPORATION and CVS PHARMACY, INC., | ) | |
| | ) | |
| Respondents and Cross-Movants. | ) | |

## MEMORANDUM OF LAW
## IN OPPOSITION TO PRIME'S MOTION TO QUASH
## AND IN SUPPORT OF CVS'S CROSS-MOTION TO TRANSFER OR,
## <u>IN THE ALTERNATIVE, TO COMPEL PRODUCTION OF DOCUMENTS</u>

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................. 2

      A.    The Rhode Island Litigation .............................................................. 2

      B.    CVS's Subpoena to Prime ................................................................. 5

ARGUMENT ...................................................................................................... 9

I.    THE COURT SHOULD TRANSFER TO THE DISTRICT OF
      RHODE ISLAND BOTH PRIME'S MOTION TO QUASH AND
      CVS'S CROSS-MOTION TO COMPEL. .................................................... 9

II.    PRIME'S MOTION TO QUASH SHOULD BE DENIED. ....................... 11

      A.    Prime's Request to Shift the Cost of Complying with the
           Subpoena Is Meritless. ..................................................................... 11

      B.    Prime's 236 Documents Responsive to Request No. 2 Should
           be Produced. ..................................................................................... 19

      C.    Prime Should Not Receive its Costs for Moving to Quash............. 21

III.    CVS'S CROSS-MOTION TO COMPEL DOCUMENTS
      RESPONSIVE TO REQUEST NO. 16 SHOULD BE GRANTED. .......... 22

CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

## CASES

*Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22 (D.D.C. 2011) ..................................21

*Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277 (N.D. Cal. 2017) ...13, 14, 21, 22

*BCBSM, Inc. v. Walgreen Co.*, No. 1:20-cv-1853, ECF No. 227-1
(N.D. Ill. Mar. 4, 2022) ...............................................................................................................13, 18

*Blue Cross & Blue Shield of Ala. v. CVS Health Corp.*, No. 20-cv-00236-WES-PAS
(D.R.I.) ..........................................................................................................................................2

*Blue Cross & Blue Shield of N.C. v. Express Scripts, Inc.*, No. 1:22-mc-5, ECF No. 19
(D.R.I. June 14, 2022) ...................................................................................................................10

*Capital BlueCross v. CVS Health Corp.*, No. 1:20-cv-520-WES-PAS ...........................................2

*CareFirst of Maryland, Inc. v. CVS Health Corp.*, No. 1:21-cv-223-WES-PAS ...........................2

*Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-cv-4839-SRN-KMM, 2018 WL
3019899 (D. Minn. June 18, 2018) ...........................................................................................12, 13

*Cornell v. Columbus McKinnon Corp.*, No. 13-cv-2188-SI, 2015 WL 4747260 (N.D. Cal.
Aug. 11, 2015) ...............................................................................................................................15

*DeLong Co. v. Syngenta AG (In re Syngenta AG MIR162 Corn Litig.)*, No. 20-mc-64-
ECT-ECW, 2020 WL 5988498 (D. Minn. Oct. 9, 2020).........................................................9, 11

*Deluxe Fin. Servs., LLC v. Shaw*, No. 16-cv-3065-JRT-HB, 2017 WL 7369890 (D. Minn.
Feb. 13, 2017) ...............................................................................................................................20

*Envolve Pharmacy Solutions Inc. v. Rite Aid Headquarters Corp.*, No. N19C-12-214
(Del. Super. Ct.) ...........................................................................................................................18

*Highmark Inc. v. CVS Pharmacy, Inc.*, No. 1:20-cv-507-WES-PAS ..........................................2, 2

*Horizon Healthcare Services, Inc. v. CVS Health Corp.*, No. 1:20-cv-458-WES-PAS .................2

*Hunte Corp. v. Martinelli*, 446 F. App'x 818 (8th Cir. 2011) (per curiam) ..................................15

*Hunte Corp. v. Martinelli*, No. 10-mc-9005-S-RED, 2010 WL 4813849 (W.D. Mo. Nov.
19, 2010), *aff'd in part*, 446 F. App'x 818 (8th Cir. 2011).....................................................21

*Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*, No. 14-cv-0576-CJC-JPRx, 2016 WL
6208313 (C.D. Cal. Apr. 20, 2016)............................................................................................13

*In re BCBS v. Rite Aid Litig.*, No. 20-cv-1731-ECT-HB, ECF No. 2 (D. Minn. Aug. 7, 2020) ...................................................................................................................4

*Jackson Jordan, Inc. v. Kyle Rys., Inc.*, No. 87-cv-1059, 1988 WL 236172 (D. Kan. Mar. 23, 1988) ...............................................................................................................12, 13

*Leon v. N. Nat'l Gas Co.*, No. 21-mc-42-WMW-ECW, 2021 WL 4452874 (D. Minn. Sept. 29, 2021) ...........................................................................................9, 10, 11

*Minnesota v. Sanofi-Aventis U.S. LLC*, No. 21-mc-81-JRT-BRT, 2022 WL 986315 (D. Minn. Apr. 1, 2022) .................................................................................................10

*Mount Hope Church v. Bash Back!*, 705 F.3d 418 (9th Cir. 2012) ...............................22

*Neo Ivy Capital Management LLC v. Savvysherpa LLC*, No. 18-mc-94-SRN-DTS, 2019 WL 1435058 (D. Minn. Mar. 8, 2019) ...............................................................15

*Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212-WMW-TNL, 2019 WL 1036059 (D. Minn. Mar. 5, 2019) ...........................................................................................12, 16

*Pete v. Big Picture Loans, LLC*, No. 0:19-mc-77-JRT-KMM, 2019 WL 6250715 (D. Minn. Nov. 22, 2019) .............................................................................................10

*Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859 (E.D. Mo. 1998) ...................18

*Plumbers Welfare Fund, Local 130 v. CVS Health Corp.*, No. 1:16-cv-00447-WES-PAS (D.R.I.) ...........................................................................................................................10

*Rochester Drug Co-Operative v. Mylan Inc.*, No. 22-mc-0007-ECT-JFD, 2022 WL 1598377 (D. Minn. May 20, 2022) ...........................................................................14

*Sandoz, Inc v. United Therapeutics Corp.*, No. 19-cv-10170, 2021 WL 1259667 (D.N.J. Apr. 6, 2021) ...............................................................................................................15

*Schedin v. Johnson & Johnson (In re Levaquin Prod. Liab. Litig.)*, No. 08-cv-5743-JRT, 2010 WL 4867407 (D. Minn. Nov. 9, 2010) ...........................................................16

*Schwartz v. N.Y.C. Off-Track Betting Corp.*, Nos. 92-cv-1166-KMW, 92-cv-2768-KMW, 1993 WL 42760 (S.D.N.Y. Feb. 11, 1993) .............................................................17

*SEC v. Archer*, No. 16-cv-3505, 2018 WL 3424449 (S.D.N.Y. July 2, 2018) ...................17, 19

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, No. 1:16-cv-46-S (D.R.I.) ...........................................................................................10

*United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 4:18-cv-673 (N.D. Okla.) .................................................................................................................18

*United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412 (D. Mass. 2015), *aff'd*, 827 F.3d 201 (1st Cir. 2016) ................................................................4

*W. Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-cv-1445-DSD-ECW, 2019 WL 8014512 (D. Minn. Nov. 22, 2019) .......................................................................15

*Washington v. CVS Health*, No. 15-cv-3504-YGR, ECF No. 609 (N.D. Cal. June 23, 2021) ............................................................................................................................4

*Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, No. 91-cv-2287-PKL, 1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) .................................................................................13

*Whatley v. World Fuel Servs. Corp.*, No. 20-mc-20993, 2020 WL 2616209 (S.D. Fla. May 22, 2020) .........................................................................................................18

## COURT RULES

Fed. R. Civ. P. 45 .................................................................................................6, 9, 12

Fed. R. Civ. P. 45(d)(2)(B)(ii) ..................................................................................12

Fed. R. Civ. P. 45(f) ............................................................................................9, 11

## OTHER AUTHORITIES

Carter Jones, "2 Is a Prime Number: Prime Therapeutics is Minnesota's Largest Private Company (That Isn't Cargill)," Minneapolis/St. Paul Bus. J. (Sept. 2, 2021), https://www.bizjournals.com/twincities/news/2021/09/02/prime-therapeutics-private-company-list-2021.html .................................................................................................14

## INTRODUCTION

Prime Therapeutics LLC ("Prime") is attempting to evade its obligation to produce documents responsive to CVS's subpoena and to bear its own costs for doing so.  The Court should transfer this dispute to the District of Rhode Island, because the presiding judge in the underlying cases is best positioned to evaluate the motion to quash.  That judge has overseen these cases for two years, and other related cases for even longer.  Even if this Court does not transfer the dispute, Prime's motion should be denied in its entirety.

First, Prime disregards its role as one of, if not the most, significant third-party witnesses in the case.  CVS served the subpoena in five cases where Plaintiffs, 22 Blue Cross health insurers, allege that CVS overcharged them for certain prescription drugs.  Prime is the pharmacy benefit manager ("PBM") that processed the at-issue prescriptions for more than *half* of the Plaintiff-health plans.  Several of those plans are Prime's owners.  Also, Prime is a third-party defendant in related litigation.  All of this demonstrates that Prime is an important, and far from disinterested, witness in the cases in which CVS's subpoena was issued.

Prime also contravenes the federal rule governing the costs of subpoena compliance.  As both sides agree, the two sets of documents discussed in the motion—64,000 documents identified by search terms, and Prime's 236 responses to Plaintiffs' requests to contract for pharmacy services—contain relevant information that CVS needs to properly defend itself.  The battleground is whether Prime should pay its own costs to review the former set (it should), and whether the governing confidentiality order protects

1

Prime's information in the latter set (it does).  Prime's request for relief also extends much farther than its motion even attempts to justify, as its proposed order seeks "*all future costs and fees* associated with Prime's compliance with the CVS subpoena."  ECF No. 5.  Prime's requests are meritless.

At the same time, for completeness and efficiency, if the Court does not transfer the case, it should grant CVS's cross-motion to compel Prime to produce its communications concerning the underlying cases (Request No. 16).  This evidence is relevant, there is no valid objection, and to this point Prime has provided no timeframe for producing the documents.

## FACTUAL BACKGROUND

### A.    The Rhode Island Litigation

In 2020 and 2021, various groups of Blue Cross/Blue Shield health plans filed five lawsuits against CVS.  Those cases, now consolidated for discovery before the same judge, involve 22 Plaintiffs and raise identical allegations.  *See, e.g.*, *Blue Cross & Blue Shield of Ala., et al. v. CVS Health Corp., et al.*, No. 20-cv-00236-WES-PAS (D.R.I.) (lead case).  Specifically, Plaintiffs allege that, since 2008, CVS has overcharged them for prescription drugs whenever members of their health plans filled prescriptions. Plaintiffs seek millions of dollars in damages.  *See id.*, ECF No. 1, at 1, 5 (complaint).[1]

---

[1] The four other cases are *Horizon Healthcare Services, Inc. v. CVS Health Corp., et al.*, No. 1:20-cv-458-WES-PAS; *Highmark Inc., et al. v. CVS Pharmacy, Inc.*, No. 1:20-cv-507-WES-PAS; *Capital BlueCross v. CVS Health Corp., et al.*, No. 1:20-cv-520-WES-PAS; and *CareFirst of Maryland, Inc., et al. v. CVS Health Corp., et al.*, No. 1:21-cv-223-WES-PAS.

To understand Prime's involvement in these cases, one must understand how health plans pay for prescription drugs. Generally speaking, health plans do not pay or contract with pharmacies directly. The process instead flows through a PBM, such as Prime. A health plan contracts with a PBM to administer its pharmacy benefit. The PBM, in turn, contracts with pharmacies to assemble a "network" that can serve the PBM's health plan clients. When a health plan's member fills a prescription, the pharmacy submits an electronic "claim" to the PBM, which the PBM then "adjudicates" (*i.e.*, it determines if the member has coverage for the drug and, if so, what price the member and plan should each pay).

As relevant here, adjudication often involves considering the pharmacy's "usual and customary," or "U&C," price. The U&C price is determined by and originates with the pharmacy, and the pharmacy transmits it to the PBM during adjudication. What the pharmacy submits as its U&C price typically is defined in the contract between the pharmacy and the PBM, as is true with the CVS-Prime contract. Declaration of Grant A. Geyerman ¶ 5.

Consistent with industry practice and its contracts, CVS has always submitted its retail cash price as its U&C price. U&C prices at CVS did not include the prices available through CVS's membership program, called Health Savings Pass or "HSP." The HSP program gave individuals access to lower pricing on generic drugs only if they paid an annual membership fee and agreed to terms and conditions. HSP was widely publicized. Yet over a decade after HSP debuted in 2008, Plaintiffs decided to sue. They contend that HSP prices were U&C prices, and that they overpaid because CVS did not

3

submit its HSP prices to their PBMs as U&C prices. *See* lead case, ECF No. 1, at 1–2. Their lawsuits followed several others that made similar allegations against other pharmacies with membership programs. *See, e.g., In re BCBS v. Rite Aid Litig.*, No. 20-cv-1731-ECT-HB, ECF No. 2 (D. Minn. Aug. 7, 2020).

In all three HSP-related cases to reach the merits to date, CVS has prevailed.[2]  One reason for this success has been CVS's ability to demonstrate, through evidence from PBMs like Prime, that CVS's practices followed the industry understanding of "usual and customary."  And Prime is not just any PBM: it was the PBM for at least 12 of the 22 Plaintiffs, and perhaps more.[3]  That means Prime "adjudicated" many of the claims that Plaintiffs claim involved inflated U&C prices; Prime's contract with CVS contains the definition of U&C that controlled what price CVS was obliged to submit; and if Plaintiffs had a question about U&C pricing, they would have asked Prime.  So, unsurprisingly, Plaintiffs' interrogatory answers name at least 23 Prime employees as individuals with relevant knowledge.  Geyerman Decl. ¶ 7.  What is more, Plaintiffs are not just Prime's

---

[2] *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412, 425 (D. Mass. 2015) (prevailing on a motion to dismiss), *aff'd*, 827 F.3d 201 (1st Cir. 2016); *Washington v. CVS Health*, No. 15-cv-3504-YGR, ECF No. 609 (N.D. Cal. June 23, 2021) (prevailing at a jury trial).  In May 2022, CVS received a final award in its favor in an arbitration proceeding governed by the American Arbitration Association.

[3] Those Plaintiffs are Blue Cross plans in Alabama, Florida (two), Minnesota (two), North Carolina, South Carolina (two), North Dakota, New Jersey (two), and Pennsylvania.  Several Plaintiffs have not yet made a substantial document production, so CVS does not know if those Plaintiffs also contracted with Prime.  Geyerman Decl. ¶ 6.

clients, but also the company's ***founders and owners***.  Prime's own website boasts about

the "unique Blue + Prime foundation."[4]

Prime possesses substantial evidence relevant to CVS's main defense—that HSP

prices specifically, and membership programs generally, are not U&C prices.  Prime's

vice president responsible for pharmacy contracting from 2007 to 2013, Will Lambert,

has testified to this effect before.  *See* Ex. A, ¶¶ 3, 19 ("For a . . . membership program[],

the program price historically has not been considered usual and customary in my

experience.").  His successor Bretta Grinnsteiner, a Prime vice president from

approximately 2016 to 2020, has testified the same.  Ex. B, ¶ 12 ("Prime had no

expectation that pharmacies with an opt-in membership program, like CVS's HSP

program, would submit pricing from the membership program as their U&C prices.").

Through its subpoena, CVS is seeking Prime's documents memorializing this position

and conveying as much to Plaintiffs and to pharmacies over the years.

### B.     CVS's Subpoena to Prime

On March 1, 2022, CVS served Prime with a subpoena containing eighteen

document requests.  ECF No. 4-1, at 13–15.  Prime's motion to quash implicates five

requests (Nos. 2, 4, 9, 10, and 11).  The cross-motion raises another request (No. 16).  As

for the remaining requests, for many of them Prime has yet to complete its production of

responsive documents or is still in the process of doing so.

---

[4] Specifically, the website states that Prime's "client-owners" include Plaintiff Blue Cross
plans in Minnesota, North Dakota, Florida, Alabama, North Carolina, and Pennsylvania.
*See* Ex. C.

In meet-and-confer discussions across multiple months, CVS made great efforts to accommodate Prime's concerns about the burden of responding to the subpoena.  For instance:

- Prime initially objected to providing a privilege log, citing an undue burden. Although Rule 45 requires a privilege log whenever a subpoena-recipient withholds responsive documents, CVS agreed (1) to waive for the time being a privilege log concerning nine requests in the subpoena and (2) to accept a categorical log, as opposed to a document-by-document log, for another seven requests.  *See* Ex. D.

- Concerning custodians, although Plaintiffs' interrogatory responses identify 23 Prime employees, CVS decided early in the negotiations to ask for only 13 custodians.  CVS then dropped two individuals, for a total of 11, to limit the burden on Prime.  *See* Geyerman Decl. ¶ 7.

Concerning search terms, in particular, CVS continually narrowed its requests to minimize Prime's burden.  At CVS's request, Prime explored various iterations of search terms to identify a reasonable volume to review, which reduced the document collection from approximately 92,000 documents to the current set of 64,000 documents.  *See* Geyerman Decl. ¶ 12 & Exs. E & F (identifying 92,522 set); Ex. G & H (identifying 64,259 set); Ex. I (CVS's final demand).  These 64,000 documents relate to four different requests in the subpoena:

- Request No. 4.  All Communications concerning both (a) either a Plaintiff or a member of a Plaintiff's plan and (b) one of the following topics: usual & customary prices, Generic Drug Programs, Generic Drug Membership Programs, or Discount Cards;

- Request No. 9.  All Documents, including Communications, relating to CVS's Health Savings Pass program;

- Request No. 10.  All Communications with pharmacies relating to whether prices in Generic Drug Membership Programs or Discount Card transactions are considered usual & customary prices; and

- Request No. 11.  All Documents relating to whether prices in Generic Drug Membership Programs or Discount Card transactions are considered usual & customary prices.

ECF No. 4-1, at 13–14.[5]

The document set comes from applying six tailored search terms, each of which identifies a document mentioning *a specific membership program* and/or *the relationship between membership programs and "usual and customary" prices*.  Ex. I.

| Search Term[6] | Rationale |
|---|---|
| HSP OR "Health Savings Pass" OR "Health Savings Program" OR "Health Savings Plan" | CVS's membership program |
| CVS /3 (progr* OR club OR membership OR card* OR "$4" OR list) | Designed to detect generic references to CVS's membership program |
| "Prescription Savings Club" OR "Prescriptions Savings Club" OR "Prescription Saving Club" OR "PSC" | Walgreens's membership program |
| "RX Savings Program" OR "RXSavings Program" OR "RX Saving Program" OR "RXSaving Program" | Rite Aid's membership program |
| "Kmart Maintenance Program" OR "Kmart Maintenance Program" OR "KMP" OR "Retail Maintenance Program" OR "RMP" | Kmart's membership program |

[5] Request No. 11 encompasses two other requests (Nos. 5 and 6) about the same subject.

[6] The format of the search terms has been altered for clarity.  Above, it appears in the same format as a Boolean search in Westlaw or Lexis.  Prime's vendor uses a slightly different syntax, but the effect of the search is the same.  *See* Ex. I.

| | |
|---|---|
| ("U&C" OR "U & C" OR "U AND C" OR "U+C" OR "U + C" OR UNC OR (usual /2 customar*) OR (usual /2 charge) OR (usual /2 pric*) OR "usual-and-customary") /10 (discount* OR progr* OR "price match" OR (match* /3 price) OR club* OR card* OR member* OR "$4" OR list) | Designed to detect communications discussing whether U&C prices included or excluded membership program prices—*e.g.*, "a membership club price is not the pharmacy's U&C price." |

These search terms generated far fewer documents than what Prime proposed when the parties first started negotiating. Prime's proposal generated approximately 39,000 documents. Notably, that number did *not* include "family members." Ex. J.[7] Although Prime never disclosed the number of family members associated with those 39,000 documents, it is highly likely the total volume would have exceeded 64,000, the number CVS currently wants reviewed.

Prime refuses to review the 64,000 documents, unless CVS pays part of the cost. During the meet-and-confer process, CVS asked several times how many documents Prime was willing to review without cost-sharing. Geyerman Decl. ¶ 14a. Prime refused to say. Geyerman Decl. ¶ 14a. Prime's motion followed.

The motion does not mention anything about Request No. 16, to which Prime has not appropriately responded to this point. That request seeks "[a]ll Documents, including

---

[7] A "family member" is a document attached to a document containing a search term. For example, if an email contains a search term, any attachments to the email are family members. Alternatively, if the search term is contained in the attachment to an email, the email is the family member. Of the 64,000 documents at issue, approximately 25,000 documents contain a search term and the remaining approximately 39,000 are the attached family members. Ex. H.

Communications, concerning this Action," with "Action" meaning the five consolidated cases. *See* ECF No. 4-1, at 7, 15. To date, Prime has not produced those documents or explained its plan or timeline for doing so.[8]

## **ARGUMENT**

### I.     THE COURT SHOULD TRANSFER TO THE DISTRICT OF RHODE ISLAND BOTH PRIME'S MOTION TO QUASH AND CVS'S CROSS-MOTION TO COMPEL.

Under Rule 45, the court where compliance with a subpoena is required may transfer a dispute in "exceptional circumstances." Fed. R. Civ. P. 45(f).[9] To determine if such circumstances exist, courts consider:

> (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred;
>
> (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and
>
> (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel.

*Leon v. N. Nat'l Gas Co.*, No. 21-mc-42-WMW-ECW, 2021 WL 4452874, at *4 (D. Minn. Sept. 29, 2021) (quoting *DeLong Co. v. Syngenta AG (In re Syngenta AG MIR162 Corn Litig.)*, No. 20-mc-64-ECT-ECW, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020)). Courts also look to "the complexity, procedural posture, duration of pendency,

---

[8] There are other Requests in the subpoena—namely Nos. 1, 3, 12, 14, and 17—for which Prime also has yet to complete its production of responsive documents. Request No. 16 differs from these requests in that Prime has given no reasonable indication of timely producing responsive documents. CVS's cross-motion is without prejudice to seek relief as to these other requests, at an appropriate time, should doing so become necessary.

[9] Prime does not consent to transferring this matter to the District of Rhode Island. *See* Geyerman Decl. ¶ 21.

and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 21-mc-81-JRT-BRT, 2022 WL 986315, at *2 (D. Minn. Apr. 1, 2022) (quoting *Pete v. Big Picture Loans, LLC*, No. 0:19-mc-77-JRT-KMM, 2019 WL 6250715, at *1 (D. Minn. Nov. 22, 2019)).

These factors favor transfer. First, the five underlying cases are complex. *See Sanofi-Aventis*, 2022 WL 986315, at *2 (concluding that a "years-long scheme . . . to inflate insulin prices" was "undoubtedly complex" and favored transfer). The presiding judge (the Hon. William E. Smith) has overseen these cases for two years, and has also overseen two other HSP cases since 2016.[10] Over the years in these cases, he has managed discovery and decided several dispositive and class certification motions, becoming very familiar with the nature of the litigation. In fact, he is about to resolve another subpoena dispute between Plaintiffs and a PBM. *See Blue Cross & Blue Shield of N.C. v. Express Scripts, Inc.*, No. 1:22-mc-5, ECF No. 19 (D.R.I. June 14, 2022) (transferred from E.D. Mo.). "[W]hen substantially identical discovery is served on nonparties in different Districts," courts favor transfer, since resolving the dispute would "pave[] the way for inconsistent rulings." *Leon*, 2021 WL 4452874, at *4. Judge Smith is therefore in the best "position to assess the burden created by the subpoena." *See Sanofi-Aventis*, 2022 WL 986315, at *2 & n.3; *see also Pete*, 2019 WL 6250715, at *1

---

[10] *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, No. 1:16-cv-46-S (D.R.I.), and *Plumbers Welfare Fund, Local 130 v. CVS Health Corp.*, No. 1:16-cv-00447-WES-PAS (D.R.I.).

(transferring a dispute where another judge was "presiding over . . . several other related cases" and had "welcomed the transfer of subpoena-related motions from other districts").

Finally, Prime will not suffer an undue burden from a transfer.  The motions already will be fully briefed from this Court.  *See Leon*, 2021 WL 4452874, at \*5.  Prime, therefore, will not need local counsel.  *See* Fed. R. Civ. P. 45(f).  And hearings in Judge Smith's court have occurred by Zoom since the pandemic began, alleviating any concerns about travel.  *See* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("If the motion is transferred, judges are encouraged to permit telecommunications methods to minimalize the burden."); *In re Syngenta AG MIR162 Corn Litig.*, 2020 WL 5988498, at \*6 (ordering transfer while noting the likelihood of remote hearings).  For all these reasons, this Court should transfer the dispute to the District of Rhode Island.

## II.    PRIME'S MOTION TO QUASH SHOULD BE DENIED.

### A.    Prime's Request to Shift the Cost of Complying with the Subpoena Is Meritless.

#### 1.    No cost shifting of any sort is warranted.

Even if this Court declines to transfer this dispute, it should deny Prime's sweeping request for cost-shifting.  In its brief, Prime argues for shifting the cost of reviewing the 64,000 documents identified by a keyword search.  Yet its Proposed Order, as drafted, seeking cost-shifting of much more: "*all future costs and fees* associated with Prime's compliance with the CVS subpoena."  ECF No. 5 (emphasis added).  Prime never mentioned cost-shifting for *all* compliance costs until submitting its papers here.

Geyerman Decl. ¶ 14b.  To be clear, no cost-shifting is appropriate, whether for the 64,000 documents or for the other requests in the subpoena to which Prime is still in the process of producing documents.

This conclusion flows from the general rule.  "Typically, . . . a person who receives a Rule 45 subpoena is required to absorb the costs of responding to that subpoena."  *Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212-WMW-TNL, 2019 WL 1036059, at *5 (D. Minn. Mar. 5, 2019).  Cost-shifting may be appropriate if the subpoena imposes "significant expense."  *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-cv-4839-SRN-KMM, 2018 WL 3019899, at *2 (D. Minn. June 18, 2018) (quoting Fed. R. Civ. P. 45(d)(2)(B)(ii).  And that depends on three factors: "(1) the recipient's interest in the outcome of the case; (2) whether the recipient can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance."  *Paisley Park*, 2019 WL 1036059, at *5.  These factors do not support cost-shifting here.

For the first factor, Prime asks the wrong question: it is not whether Prime is a third party to the case, but whether Prime is a *disinterested* third party.  When third parties are "involved in litigation . . . arising out of the same facts and have material and relevant information about this case," they "are not neutral" for purposes of cost shifting.  *Jackson Jordan, Inc. v. Kyle Rys., Inc.*, No. 87-cv-1059, 1988 WL 236172, at *2 (D. Kan. Mar. 23, 1988).  After all, "Rule 45's cost-shifting provision was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the

lawsuit." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D. Cal. 2017) (quoting another source) (cited with approval in multiple Minnesota cases).[11]

On several levels, Prime is not a disinterested party. For one thing, many of Prime's clients and owners are the Plaintiffs suing CVS. To maintain good relations with its clients and owners, Prime is incented to support their views in the litigation. For another thing, Prime was recently impleaded, by Walgreens, as a third-party defendant in a U&C case brought by many of the same Blues plans that are suing CVS. *See BCBSM, Inc. v. Walgreen Co.*, No. 1:20-cv-1853, ECF No. 227-1 (N.D. Ill. Mar. 4, 2022). In that case, Walgreens denies that it submitted "inflated" usual and customary prices to Prime, but if its practices resulted in overcharges, then Prime is liable for contribution. That pending claim makes Prime not disinterested here. *See Jackson Jordan*, 1988 WL 236172, at *2 (holding that a subpoena recipient involved in parallel litigation was "not neutral" for purposes of cost-shifting analysis).

What is more, Prime was "substantially involved in the underlying transaction[s]" at CVS. *Balfour Beatty*, 319 F.R.D. at 281 (quoting another source). As Plaintiffs' PBM, Prime "was not a mere bystander to the transactions at issue." *Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, No. 91-cv-2287-PKL, 1995 WL 6259, at *7 (S.D.N.Y. Jan. 9, 1995). It adjudicated the allegedly overpriced prescriptions for more than half of the suing Plaintiffs and, therefore, Prime "could reasonably anticipate continuing involvement, whether as a litigant or as a nonparty." *Id.*; *see also Hyundai Motor Am.,*

---

[11] *See, e.g.*, *Cedar Rapids Lodge*, 2018 WL 3019899, at *2.

*Inc. v. Pinnacle Grp., LLC*, No. 14-cv-0576-CJC-JPRx, 2016 WL 6208313, at *1 (C.D. Cal. Apr. 20, 2016) (declining to shifts costs when the non-party was "affiliated" with the plaintiff and acted as the plaintiff's distributor).  The first factor thus weighs heavily against Prime shifting costs to CVS.[12]

On the second factor, Prime also falls short.  The question is whether the subpoena imposes "significant" expense, which turns upon the non-party's resources.  *See Balfour Beatty*, 319 F.R.D. at 281.  "An expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution."  *Id.* (alteration adopted) (quoting another source).  Prime falls in the latter category.  It is a major PBM in the pharmaceutical industry, with billions of dollars in revenue.[13]  In fact, Prime is Minnesota's second-largest private company—second only to Cargill, the nation's largest.  Yet Prime's motion does not discuss Prime's financial wherewithal at all.  *See Balfour Beatty*, 319 F.R.D. at 282 (declining to shift costs where the subpoena recipient "ha[d] not provided any basis for [the court] to determine that it is not financially able to bear the entirety of the costs of production").  Given its resources,

---

[12] The first factor also distinguishes this case from *Rochester Drug Co-Operative v. Mylan Inc.*, No. 22-mc-0007-ECT-JFD, 2022 WL 1598377 (D. Minn. May 20, 2022) (cited at Mem. 12).  There, the court ordered cost-shifting, but the subpoena recipient was not affiliated with a party to the underlying action.  *See id.* at *12.  To the contrary, it was one of the defendants' competitors and an alleged victim of the defendants' antitrust violations.  *See id.*  The court also emphasized the heavy burden of retrieving "archived" documents from an obsolete database, *see id.* at *11, a factor not present in this case.

[13] Carter Jones, "2 Is a Prime Number: Prime Therapeutics is Minnesota's Largest Private Company (That Isn't Cargill)," Minneapolis/St. Paul Bus. J. (Sept. 2, 2021), https://www.bizjournals.com/twincities/news/2021/09/02/prime-therapeutics-private-company-list-2021.html.

Prime can easily review 64,000 documents without incurring significant expense. *See Sandoz, Inc v. United Therapeutics Corp.*, No. 19-cv-10170, 2021 WL 1259667, at *3 (D.N.J. Apr. 6, 2021) (holding that $45,000 to search and review over 25,000 documents with families was not a "significant expense" for a "large company"); *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-2188-SI, 2015 WL 4747260, at *2, *4 (N.D. Cal. Aug. 11, 2015) (denying a motion for cost shifting because the $227,597 in costs were "dwarfed by [the company's] profit figures").

None of Prime's cases says otherwise. Their holdings do not establish a certain threshold for cost-shifting; they instead reflect the individual facts of each case. For instance, Prime first points to *Neo Ivy Capital Management LLC v. Savvysherpa LLC*, No. 18-mc-94-SRN-DTS, 2019 WL 1435058 (D. Minn. Mar. 8, 2019), *report and recommendation adopted*, 2019 WL 1430156 (D. Minn. Mar. 29, 2019). Mem. 12. This case, Prime suggests, means that "485 hours of attorney time at an approximate cost of $110,000" would warrant cost-shifting. Mem. 12 (quoting *Neo Ivy*, 2019 WL 1435058, at *4). But that was the cost of responding to a single request in one case, not four requests in five consolidated cases. *See Neo Ivy*, 2019 WL 1435058, at *4. That request was also "hopelessly overbroad," *id.*, which is not Prime's accusation here. And Prime's other cases are distinguishable. Mem. 12–13 (citing *W. Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-cv-1445-DSD-ECW, 2019 WL 8014512, at *6 (D. Minn. Nov. 22, 2019) (requiring cost-sharing where a party served an overbroad request and "stated it was willing to share in some of the costs"); *Hunte Corp. v. Martinelli*, 446 F. App'x 818, 819 (8th Cir. 2011) (per curiam) (affirming a cost-shifting order but observing that, in the

district court order cited by Prime, the district court granted reconsideration because it had not considered the relevant factors).[14]

In short, Prime's request for cost-shifting should be denied, both as to the 64,000 documents actually addressed in the motion and as to "all [Prime's] future costs and fees" for compliance.

### 2. Prime's suggestion of undue burden is misplaced and overstated.

As mentioned, Prime's argument concerning the 64,000 documents addresses only who should bear the cost of review.  Prime is not asking the Court to find that the documents are not relevant, nor does Prime argue that they should not be produced *at all* because they are an unduly burdensome volume.  Because Prime is not making such arguments, the proper framework to decide cost-shifting is that set forth above.  Nevertheless, inasmuch as Prime suggests that 64,000 documents is an unreasonable volume, it could not establish undue burden.

The undue burden inquiry turns on several factors, including "(1) the relevance of the information requested; (2) the need of the party for production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed."  *Schedin v. Johnson & Johnson (In re Levaquin Prod. Liab. Litig.)*, No. 08-cv-5743-JRT, 2010 WL 4867407, at *2 (D. Minn. Nov. 9, 2010) (quoting another source).

---

[14] The third factor, whether the litigation is of public importance, does not come into play in this commercial litigation.  *See Paisley Park*, 2019 WL 1036059, at *5 (omitting discussion of this factor in a breach of contract and copyright infringement action).

Prime's motion ignores the majority of these factors.  Most conspicuously, Prime does not (and cannot) contest that the documents are highly relevant, important to CVS's defense, described with reasonable particularity in the subpoena, and proportionate to the scope of this case (*i.e.*, five consolidated actions, involving twenty-two plaintiffs, seeking millions of dollars for a decade-plus worth of transactions).  As Prime well knows, other U&C cases have turned on similar evidence that, for better or worse, is most efficiently located through thoughtful search terms, custodians, and dates.  In short, multiple factors undermine any suggestion that 64,000 documents pose an undue burden.

Resisting this conclusion, Prime turns the analysis into a numbers game.  It cites the number of documents, the number of hours, and the number of dollars it allegedly must expend.  *See, e.g.*, Mem. 1.  If these numbers surpass a certain threshold, Prime seems to assume, then surely cost-sharing is appropriate.  That is not true.  *See supra* Part I.A.1 (identifying the relevant analytical framework).

Also, Prime is not the typical third-party witness.  Although "a nonparty is entitled to some enhanced protection against burdensome discovery requests, the protection is less robust when the nonparty is closely allied" with a party to the underlying litigation. *SEC v. Archer*, No. 16-cv-3505, 2018 WL 3424449, at *1 (S.D.N.Y. July 2, 2018) (cleaned up) (quoting *Schwartz v. N.Y.C. Off-Track Betting Corp.*, Nos. 92-cv-1166-KMW, 92-cv-2768-KMW, 1993 WL 42760, at *3 (S.D.N.Y. Feb. 11, 1993)).  Here, Prime will likely testify on behalf of Plaintiffs, its "client-owners."  So Prime's documents will be very important at depositions and at trial, when Prime's employees will be asked about the company's historical position on membership programs (as

17

shown by the Lambert and Grinnsteiner testimony), and that position undermines its client-owners' position in the litigation.

Besides, Prime's numbers are overblown.  The subpoena will not, as Prime suggests, require it to review many tens of thousands of documents it has never reviewed before.  Rather, the subpoena seeks documents that Prime largely has already produced, or is in the process of producing, in other U&C cases.  In the *Walgreens* contribution matter, for example, Prime is responding to virtually identical document requests to those in CVS's subpoena.  *See BCBSM, Inc.*, ECF No. 209-3.  Exhibit K to this brief provides a side-by-side comparison showing how the same documents are requested in both CVS's subpoena and in the *Walgreens* matter.

Furthermore, the 64,000 documents overlap with documents Prime previously produced in *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 4:18-cv-673 (N.D. Okla.), and *Envolve Pharmacy Solutions Inc. v. Rite Aid Headquarters Corp.*, No. N19C-12-214 (Del. Super. Ct.).  Prime's counsel has acknowledged this overlap.  *See* Geyerman Decl. ¶ 13.  Prime says these other subpoenas requested fewer documents, Mem. 11, but that is largely because Prime was not the *plaintiffs' captive PBM*, much less the PBM for a *dozen* of them.  Surely Prime's e-discovery vendor can leverage Prime's coding decisions (*i.e.*, privilege determinations) to ensure that work is not repeated.  So, "[i]f anything, [Prime's] production of the documents . . . will further judicial economy and reduce costs because the same documents can be used in different cases."  *Whatley v. World Fuel Servs. Corp.*, No. 20-mc-20993, 2020 WL 2616209, at *3 n.5 (S.D. Fla. May 22, 2020); *see also Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F.

Supp. 2d 859, 862 (E.D. Mo. 1998) (rejecting a burden argument and denying a motion to quash where "the requested . . . documents ha[d] already been or w[ould] have to be produced elsewhere").

In short, Prime is closely allied with Plaintiffs, is a party in similar litigation, and must produce many of the same documents elsewhere.  In these circumstances, the 64,000 documents would not present an undue burden.  *See Archer*, 2018 WL 3424449, at *1 (rejecting an undue burden argument where a third party was "closely allied" with a party to the underlying action, even though the third party might spend "hundreds of hours of attorney time" reviewing "over 50,000 responsive documents").

### B.     Prime's 236 Documents Responsive to Request No. 2 Should be Produced.

Prime's request to quash Request No. 2, which seeks "[e]ach response from [Prime] to any request for proposal from a Plaintiff concerning a contract for pharmacy benefit management services during the Relevant Time Period," should be denied as well. ECF No. 4-1 at 13.  Prime has identified 236 responsive documents.  *See* Mem. 8. Notably, Prime does not (and cannot) argue these documents pose an undue burden. Prime instead offers three unpersuasive arguments.

The ***first*** is based on relevance, but it starts from the odd premise that the documents contain *some* relevant information.  *See* Mem. 7.  This relevant information "is dwarfed by the amount of irrelevant information," Prime contends, so "the upside for CVS is almost certainly going to be no more than a handful of pages of potential relevance."  Mem. 8.

A "handful of pages," of course, can make all the difference.  Imagine a 200-page response by Prime to a Plaintiff's request to contract for pharmacy-benefit services.  On one page, Prime answers "No" to the question: does the PBM require pharmacies with membership programs to submit those prices as U&C?  On another page, Prime boasts that its clients benefit financially from its services because of its "extensive" compliance and audit programs for pharmacies.  With such controls in place, CVS contends, Prime would have objected to CVS's non-submission of membership prices as U&C prices had Prime had any concern with that approach.  (Prime never raised an objection.)  These two pages of the RFP response would provide important evidence for CVS's defense, which should not be withheld because they happen to be within a larger document.  Prime cites no case for its position.  Mem. 8.

Prime's *second* argument—that CVS can obtain the same RFP responses from Plaintiffs—is not persuasive either.  To be sure, CVS has requested these documents from Plaintiffs.  Geyerman Decl. ¶ 10.   To this point, however, CVS has not received many, if any, of them.  Geyerman Decl. ¶ 10.   Also, while Prime has already located the 236 documents, Plaintiffs "may not have kept copies of the same communications that [Prime] did."  *Deluxe Fin. Servs., LLC v. Shaw*, No. 16-cv-3065-JRT-HB, 2017 WL 7369890, at *5 (D. Minn. Feb. 13, 2017).  That is why "[n]o rule requires the requesting party to seek discovery from only one party to any given conversation."  *Id.*

***Third***, Prime says the documents contain "highly confidential and proprietary information."  Mem. 7.  The protective order in the case solves that problem, containing three levels of protection—"Confidential," "Highly Confidential – Attorneys' Eyes

Only," and "Highly Confidential – Outside Counsel Eyes Only." Ex. L, at 3–5. This third layer—"Outside Counsel Eyes Only"—was added via a recement amendment, **_adopted to afford maximum protection for the Plaintiffs' PBMs' business-sensitive information_**. *See* Ex M., at 1. "The existence of a protective order weighs against quashing the subpoena," since it will "protect and prevent public disclosure of confidential and sensitive business information." *Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. 2011); *see also Hunte Corp. v. Martinelli*, No. 10-mc-9005-S-RED, 2010 WL 4813849, at *2 (W.D. Mo. Nov. 19, 2010) (cited by Prime at Mem. 12–13) (rejecting a confidentiality argument as "without merit" because "there [was] a confidentiality order in the underlying action"), *aff'd in part*, 446 F. App'x 818 (8th Cir. 2011).

Because the documents contain relevant information, whose sensitive information can be protected by the governing protective order, this Court should compel Prime to produce its 236 responses to Plaintiffs' RFPs for pharmacy benefit management services.

## C.    Prime Should Not Receive its Costs for Moving to Quash.

Finally, the Court should deny Prime's request for "its costs and fees associated with this motion [to quash]." Mem. 14. First and foremost, the lack of an undue burden is fatal to this request. *See, e.g.*, *Balfour Beatty*, 319 F.R.D. at 283. Furthermore, CVS has taken multiple steps to lessen Prime's overall burden, including making concessions on search terms, custodians, and the privilege log. *See id.* (denying a request for costs where the subpoenaing party "engaged in discussions . . . to narrow the subpoena"). And even if the Court ultimately disagrees with CVS on the issues discussed *supra*,

21

"[s]anctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (reversing an award of attorneys' fees and costs). Indeed, a court "need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which . . . should not give rise to sanctions." *Balfour Beatty*, 319 F.R.D. at 283 (citation omitted). Tellingly, Prime does not cite a single case in which a court awarded the costs of moving to quash in a comparable situation. The request should be denied.

## III.   CVS'S CROSS-MOTION TO COMPEL DOCUMENTS RESPONSIVE TO REQUEST NO. 16 SHOULD BE GRANTED.

For completeness and efficiency, the Court's order should also compel Prime to produce the documents responsive to Request No. 16 in the subpoena. To this point, Prime has neither produced documents responsive to the request nor clearly articulated its plan and timeframe for doing so.

This request seeks "[a]ll Documents, including Communications, concerning this Action." *See* ECF No. 4-1, at 7, 15. Based on discussions with Plaintiffs' counsel, CVS understands that Plaintiffs' employees who interact with Prime in the normal course have communicated with their counterparts about this litigation. As one example only, Plaintiffs' employees have requested Prime provide certain transaction data that Plaintiffs may use in calculating damages. *See* Geyerman Decl. ¶ 16. Any communications concerning the data being extracted for this case—or concerning this case in another way—is relevant information that CVS should receive. Many weeks ago, Prime's

counsel indicated they would attempt to locate the communications concerning data, but as of this filing, Prime has not even identified the account managers involved in the communications.  *See* Geyerman Decl. ¶ 19.  It also has proved no timeframe for doing so, leaving CVS guessing when, if ever, it will produce the documents responsive to Request No. 16.  *See* Geyerman Decl. ¶ 20.

## **CONCLUSION**

For the foregoing reasons, CVS respectfully requests that the Court enter an order transferring this entire matter to the District of Rhode Island.  If the Court declines to transfer the matter, and decides the motions, it should (1) deny Prime's motion to quash in full and (2) compel Prime to comply with Request Nos 16 in the subpoena.  Because the subpoena has been outstanding for several months, the Court's order should require compliance in all respects within 30 days.

Dated: June 22, 2022                    Respectfully submitted,

/s/ William R. Skolnick

William R Skolnick (#137182)
Samuel M. Johnson (#395451)
SKOLNICK & BARDWELL, P.A.
1150 SPS Tower
333 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 677-7600
Fax: (612) 677-7601

Grant A. Geyerman
(*pro hac vice* motion pending)
Andrew T. Guiang[*] (#402249)
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for CVS Health Corp. and
CVS Pharmacy, Inc.*

---

[*] Admitted in Minnesota and New York. Practice in the District of Columbia supervised by members of the D.C. Bar as required by D.C. App. R. 49(c)(8).