UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PRIME THERAPEUTICS LLC, | Civil Action No.: 22-mc-35 (WMW-JFD) |
| Movant, | |
| v. | **PRIME THERAPEUTICS LLC'S MEMORANDUM OF LAW IN OPPOSITION TO CVS'S MOTION TO TRANSFER OR COMPEL PRODUCTION OF DOCUMENTS** |
| CVS PHARMACY, INC. and CVS HEALTH CORPORATION, | |
| Respondents. | |

## **INTRODUCTION**

In the Pixar movie *The Incredibles*, the main villain plots to develop and sell technology that will give everyone in the world superpowers. "And when *everyone's* super," he cackles, "*no one* will be." *The Incredibles* (Pixar 2004).

The Pixar villain's observation—that if everything is exceptional, nothing is—is the root of the problem with CVS Pharmacy, Inc. and CVS Health Corporation's (collectively "CVS") motion to transfer Prime Therapeutics LLC's ("Prime") motion to quash to the U.S. District Court for the District of Rhode Island. Federal Rule of Civil Procedure 45(f) is clear that motions to transfer subpoena-related motions away from the district where compliance with the subpoena is sought may only be granted "if the person subject to the subpoena consents or if the court finds exceptional circumstances." The burden of showing exceptional circumstances is on the party advocating transfer. Yet CVS's exceptional-circumstances analysis is a single

paragraph of considerations that are true of essentially any federal lawsuit resulting in out-of-district discovery: that the case is complex, that the Rhode Island judge has more familiarity with the issues it raises, and that the Rhode Island judge has already been presented with other (unrelated) dispositive and non-dispositive motions. If CVS's efforts are sufficient to meet the exceptional-circumstances test of Rule 45, it is hard to imagine a case that wouldn't. CVS has not carried its burden of establishing that exceptional circumstances warrant transfer, and its motion should be denied.

The Court should also deny CVS's motion to compel a response to subpoena Request 16. CVS's motion fails to acknowledge multiple crucial facts, including that Prime has already conducted searches for documents responsive to this Request, and that the specific documents that CVS seeks are ones that CVS first asked about just a few weeks ago (months after its subpoena was served). Most fundamentally, however, CVS's motion fails because Prime has never said that it will not collect and review the documents that CVS is requesting—and in fact has continued to work on doing so even while CVS's motion is pending. CVS's motion to compel is accordingly either moot or premature and should be denied.

**ARGUMENT**[1]

**I.    CVS's motion to transfer should be denied.**

Pursuant to Federal Rule of Civil Procedure 45, a motion to quash a third-party subpoena *must* be brought in the district where compliance with the subpoena is sought. *See* Fed. R. Civ. P. 45(d)(3). Motions to quash brought elsewhere are subject to dismissal. *Cf. In re Pork Antitrust Litig.*, No. 18-cv-1776, 2021 WL 8648823, at *2 (D. Minn. Sept. 3, 2021) (dismissing motion to compel brought in the issuing court instead of in the district where compliance with the subpoena was required, because the issuing court "has no authority to rule on the present motion"). Motions to quash may, however, be transferred to the issuing court, but only in two limited circumstances: (1) "if the person subject to the subpoena consents," or (2) "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Prime opposes the transfer of its motion to quash to the issuing court. *See* Declaration of Virginia McCalmont in Opposition to CVS's Motion to Transfer or Compel Production of Documents ("Second McCalmont Decl.") ¶ 3.  Thus, transfer is only appropriate "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The burden of establishing that exceptional circumstances exist "rests on the proponent of transfer." *Leon v. N. Nat'l Gas Co.*, No. 21-mc-0042 (WMW/ECW), 2021 WL 4452874, at *3 (D.

---

[1] Because Local Rule 7.1(b)(3) disallows reply briefs in support of non-dispositive motions without prior permission of the Court, Prime confines this brief to its opposition to CVS's motions to transfer and compel. Prime would welcome the opportunity to address CVS's arguments in response to Prime's motion to quash if invited to do so by the Court.

Minn. Sept. 29, 2021); *see also* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment ("[T]he proponent of transfer bears the burden of showing that [exceptional] circumstances are present."). Because CVS has failed to carry its burden of establishing exceptional circumstances, its motion to transfer should be denied.

Rule 45 does not define "exceptional circumstances," but the advisory committee notes provide guidance on the high bar that must be met to warrant transfer of a motion to quash to another district. Those notes state that the "prime concern" when assessing a motion to transfer "should be avoiding burdens on local nonparties subject to subpoenas." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. A nonparty's interest "in obtaining local resolution of" a motion to quash may be outweighed, however, if necessary "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in many districts." *Id.*

CVS has failed to establish that any of the exceptional circumstances identified by Rule 45's advisory committee comments—or any other exceptional circumstances that would necessitate transfer—are present here. As CVS itself notes several times in its motion papers, Prime's motion to quash is largely about the burden that CVS's subpoena seeks to impose on it—not the relevance of CVS's specific requests. *See* Mem. of Law in Opp. to Prime's Mot. to Quash and in Support of CVS's Cross-Mot. to Transfer or, in the Alternative, to Compel Production of Docs. ("CVS Br.") [ECF 22] at 1

4

("The battleground is whether Prime should pay its own costs . . . ."). This is a crucial point for the transfer analysis, because it means that a detailed understanding of each party's claims and defenses in the underlying litigation is not necessary to resolve Prime's motion. Rather, the court that decides Prime's motion need only determine whether "the burden of producing the[] documents" that CVS's subpoena requests "is significant" enough "that it is appropriate to shift some of the costs to recover these materials" to CVS. *Rochester Drug Co-Operative v. Mylan Inc.*, No. 22-mc-0007 (ECT/JFD), 2022 WL 1598377, at *11 (D. Minn. May 20, 2022). This Court can make that determination just as effectively as the issuing court. The fact that the issuing court is not "in the best position to rule on the motion to compel," *In re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, No. 20-mc-064, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020), weighs heavily against transfer.

Other exceptional circumstances are also lacking. For example, CVS has not shown that the issuing court "has already ruled on issues presented by the motion." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Nor could it: because Prime's motion presents issues specific to the CVS subpoena to Prime—namely whether the number of documents that CVS asks Prime to review is unduly burdensome—there is no reason that the questions presented by Prime's motion would have already been presented to or decided by the issuing court.

Similar issues plague CVS's reference to "another subpoena dispute between Plaintiffs and a PBM." CVS Br. at 10. CVS hints that the subpoena that is the subject of

5

this other dispute is "substantially identical" to the CVS subpoena to Prime, and that as a result if this Court were to resolve Prime's motion it would be "pav[ing] the way for inconsistent rulings." CVS Br. at 10 (quoting *Leon*, 2021 WL 4452874, at *4). But CVS fails to offer any evidence that the CVS subpoena to Prime is "substantially identical" to the other referenced subpoena, even though such evidence would have been easy for CVS to provide. More importantly, CVS fails to note that the heart of the other subpoena dispute is the relevance of the requested discovery.[2] *See* Second McCalmont Decl. Ex. B at 6. As a result, the issues that will be addressed in the other subpoena dispute are entirely different from the ones presented in Prime's motion to quash. There is accordingly no risk that having different courts decide these two subpoena disputes would result in inconsistent rulings.

Moreover, the fact that CVS only identifies one (distinguishable) subpoena dispute that is set to be resolved by the Rhode Island court is itself a concession that the issues presented by Prime's motion to quash are not "likely to arise in many districts." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. This is yet another way in which CVS has failed to carry its burden of establishing that exceptional circumstances warrant transfer. *Cf. In re Syngenta AG MIR162 Corn Litig.*, 2020 WL 5988498, at *4 (granting motion to transfer to an issuing court because

---

[2] CVS also fails to note that the Rhode Island court is deciding the other subpoena dispute *because the subpoena recipient consented to transfer*. *See* Second McCalmont Decl. Ex. A at 1. In other words, CVS has not provided evidence that any court has yet decided that exceptional circumstances warrant transfer of out-of-district third-party discovery back to the issuing court for resolution.

6

ruling on a motion to quash "may require the court to interpret the Coordination Order—implemented to ensure uniformity and efficiency of discovery for thousands of related cases").

Because CVS has failed to establish that exceptional circumstances warrant transfer, its motion should be denied. *See* Fed. R. Civ. P. 45(f). But even if any of the thin justifications that CVS provides for transfer rise to the level of exceptional circumstances (and they do not), those circumstances are outweighed by Prime's interest "in obtaining local resolution of the motion," Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment, and the burden that transfer would put on Prime. Prime's principal place of business is in Eagan, Minnesota, which is why the place of compliance for the CVS subpoena is Minnesota. *See* McCalmont Decl. Ex. A at 1 [ECF 4-1]. Both the in-house and outside counsel working on Prime's compliance with the CVS subpoena are Minnesota based. Second McCalmont Decl. ¶ 4. None of the outside lawyers representing Prime are admitted to practice before the U.S. District Court for the District of Rhode Island, nor do they regularly practice there on a *pro hac vice* basis. Second McCalmont Decl. ¶ 5. Although CVS argues that Prime will not technically require local counsel if the case is transferred, *see* CVS Br. at 11, foregoing local counsel would carry the risk of noncompliance with local rules, practices, and procedures. Prime would therefore likely incur local counsel costs if the case were to be transferred. *See* Second McCalmont Decl. ¶ 6. In addition, it is unclear whether supplemental process would be required by the Rhode Island court,

7

as well as whether any hearing on Prime's motion to quash (and CVS's cross-motion to compel) would be conducted virtually or in person.[3] These are all sources of potentially significant additional costs that would burden Prime if CVS's motion to transfer were to be granted. *See Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 0:18-mc-00059 (DSD/KMM), 2018 WL 5994189, at *3 (D. Minn. Nov. 15, 2018) (noting that defense of a subpoena in a different jurisdiction "would require extra travel, expense, preparation and time").

"Transfer is not favored," *id.*, and the burden that would be placed on Prime by transferring its motion to quash to another court outweighs the modest reasons for transfer that CVS has provided. CVS's motion to transfer should be denied.

## II.    CVS's motion to compel should be denied.

CVS's motion to compel Prime's response to subpoena Request 16 should also be denied because it is either moot or premature. Crucially, *Prime has never said that it will not produce documents responsive to this Request*. *See* Second McCalmont Decl. ¶ 7. In fact, Prime has already worked hard to provide a substantive response to Request 16: in March and April Prime devised a set of search terms to generate documents responsive to Request 16, which Prime ran against documents collected

---

[3] CVS asserts that "hearings in Judge Smith's court have occurred by Zoom since the pandemic began," CVS Br. at 11, but does not say whether Judge Smith has indicated that hearings will continue to be conducted by Zoom in the future. It is also unclear (at least to Prime) whether Judge Smith will handle discovery-related motions himself or will instead refer them to the magistrate judge associated with the underlying litigation (Judge Patricia Sullivan). CVS provides no information about whether Judge Sullivan is conducting hearings by Zoom or in person.

from custodians that CVS had identified. *See* Second McCalmont Decl. ¶ 8. On April 8, 2022, undersigned counsel notified CVS that those search terms had produced no hits. McCalmont Decl. Ex. C [ECF 4-3] ("We also ran the case numbers for the five consolidated cases, which produced no hits."). CVS never followed up on Prime's early searches for documents responsive to Request 16. *See* Second McCalmont Decl. ¶ 9. Of particular note, CVS has not challenged the sufficiency of Prime's searches, nor has CVS provided alternate search terms. *See* Second McCalmont Decl. ¶ 10.

More than a month after Prime provided information about its Request 16 searches to CVS, however, CVS's counsel raised an entirely new issue: in a meet-and-confer call on May 10, 2022, CVS's counsel reported that they had recently learned that certain health plan representatives—the plaintiffs in the underlying litigation—may have asked Prime employees for data related to pharmaceutical reimbursement transactions. *See* Second McCalmont Decl. ¶ 11. CVS asked Prime for documents related to these transaction data requests. *See* Second McCalmont Decl. ¶ 12. Although Prime questions whether an isolated request for transaction data (which Prime gets regularly from its clients) is really a document "concerning this Action" (which is what Request 16 calls for), Prime agreed to investigate the matter further. *See* Second McCalmont Decl. ¶ 13. Prime asked, however, for help identifying the Prime employees with whom health plan representatives had communicated, because that information would make Prime's collection and review of responsive

9

communications (if any) targeted and efficient. *See* Second McCalmont Decl. ¶ 14. CVS's counsel asked plaintiffs' counsel for that information, and Prime's counsel also followed up with plaintiffs' counsel directly. *See* Second McCalmont Decl. ¶ 15. Prime's counsel discussed the requested information with plaintiffs' counsel on May 16, 2022, and followed up on June 3, 2022. *See* Second McCalmont Decl. ¶ 16.

At the same time that Prime was working with plaintiffs' counsel to get information that would minimize the burden associated with identifying and collecting the documents CVS seeks, Prime also internally investigated the feasibility of locating the documents CVS has asked for without that information. *See* Second McCalmont Decl. ¶ 17. Prime has thousands of employees, any number of which could have received a transaction data request. *See* Second McCalmont Decl. ¶ 18. Without knowing who received the communications that CVS is after, Prime would need to collect documents from many people and then review reams of irrelevant information looking for the handful of communications that may have occurred. *See* Second McCalmont Decl. ¶ 19. The burden on Prime from this collection and review process would be enormous. CVS has made zero effort to mitigate this burden by proposing search terms, time frames, or other limiters that would help Prime isolate the specific documents that CVS is seeking. *See* Second McCalmont Decl. ¶ 20. Moreover, CVS should be well positioned to provide this information, since its belief in the existence and importance of these communications came from *CVS's own conversations with the plaintiffs*. *See* Second McCalmont Decl. ¶ 21.

Prime accordingly followed up with CVS to make clear that it needs the names of the Prime employees who received transaction data inquiries from plaintiffs in order to be able to collect and review in a non-burdensome way the documents that CVS seeks. *See* Second McCalmont Decl. ¶ 22. Prime has been equally clear with CVS that it is diligently pursuing that information from plaintiffs' counsel. *See* Second McCalmont Decl. ¶ 23. It therefore came as a surprise when CVS's counsel informed undersigned counsel on June 21, 2022 that CVS would be filing a motion to compel the production of the information that Prime has been diligently working to collect *the very next day*. *See* Second McCalmont Decl. ¶ 24.

Notwithstanding CVS's motion—and notwithstanding the fact that Prime has already conducted searches and provided a substantive response to Request 16—in the week since CVS's motion was filed Prime has continued its efforts to obtain the information that would enable the targeted collection of the documents that CVS is now seeking. Undersigned counsel discussed the matter with plaintiffs' counsel on Friday, June 24 and again on Monday, June 27. *See* Second McCalmont Decl. ¶ 25. Progress is being made, and Prime believes that it will have the information it needs to search for and collect documents about transaction data inquiries it received (if any) within the next week. Prime plans to add those documents to the document set that is already awaiting review pending resolution of Prime's motion to quash, and will produce responsive, non-privileged documents (if any) in due course.

11

Because Prime has already provided one substantive response to Request 16 and is continuing to work diligently on providing an additional substantive response to the new request that CVS raised in mid-May, CVS's motion to compel is moot (or possibly premature) and should be denied. *See Moldex Metric, Inc. v. 3M Co.*, No. 14-1821 (JNE/FLN), 2015 WL 12781252, at *1 (D. Minn. July 8, 2015) (denying as moot a motion to compel where "the parties have reached an agreement with respect to" certain categories of documents).

## **CONCLUSION**

For the foregoing reasons, Prime respectfully asks that this Court deny CVS's cross-motions to transfer and compel.

Dated:  June 29, 2022                     Respectfully submitted,

s/ *Virginia R. McCalmont*
Robert J. Gilbertson  (# 22361X)
Virginia R. McCalmont (#399496)
FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP
Capella Tower, Suite 1750
225 South Sixth Street
Minneapolis, MN  55402
bgilbertson@forsgrenfisher.com
vmccalmont@forsgrenfisher.com
(612) 474-3300

*Counsel for Prime Therapeutics LLC*