UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PRIME THERAPEUTICS LLC, | Case No. 22-MC-35 (WMW/JFD) |
| Movant, | |
| v. | **ORDER** |
| CVS PHARMACY, INC. and CVS HEALTH CORP., | |
| Respondents. | |

This matter is before the Court on the Motion of Prime Therapeutics LLC ("Prime") to Quash a Subpoena (Dkt. No. 1) and the Motion of CVS Pharmacy, Inc., and CVS Health Corp. ("CVS") to Compel Production of Documents (Dkt. No. 20). The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court denies Prime's Motion to Quash because Prime has not shown that compliance with CVS's subpoena would be an "undue burden" or impose a "significant expense." *See Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-4839 (SRN/KMM), 2018 WL 3019899, at *2–3 (D. Minn. June 18, 2018); Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). The Court grants CVS's Motion to Compel because CVS has shown that it requests relevant and proportional discovery. Fed. R. Civ. P. 26(b)(1).

## BACKGROUND

These motions arise from a dispute between several health insurance plans and CVS. (McCalmont Decl. ¶ 3, Dkt. No. 4 ("McCalmont Decl. I"); Geyerman Decl. ¶ 2–3, Dkt.

No. 23.) *See generally* Complaint, *Blue Cross & Blue Shield of Ala. v. CVS Health Corp.*, No: 20-CV-236 (D.R.I. May 27, 2020), Dkt. No. 1. The insurance plans (referred to as "the Plans" in this Order)—some of which are Prime's clients and part-owners—allege CVS overcharged the plans for prescription drugs. (Mot. Hr'g Tr.  8:7–11, 19:17–21, Dkt. No. 36[1]; Geyerman Decl. ¶¶ 3, 6.)[2] In particular, the Plans allege that CVS should have charged their plans the same price that CVS charged members of its own loyalty program. (Geyerman Decl. ¶ 3.) The dispute spawned five[3] lawsuits, which are consolidated in the District of Rhode Island for discovery. (*Id.* ¶ 2.) Because Prime was the pharmacy benefit manager—an intermediary between the pharmacies selling drugs and the insurance plans paying for part of the cost of those drugs—for more than half of the disputed transactions, CVS served a subpoena on Prime seeking documents that would help CVS defend itself in the lawsuits. (McCalmont Decl. I ¶ 3, Ex. A; Geyerman Decl. ¶¶ 4, 6; Resp'ts' Mem. Supp. Cross-Mot. Transfer 10, Dkt. No. 22.)

---

[1] The transcript is currently under seal. However, no party requested any redactions before the November 28th deadline. Thus, this order will not be filed under seal and the transcript of the motions hearing will be made public one week after the release of this order. *See* D. Minn. LR 80.1(b)(2) (acknowledging the Court's power to increase access to a court transcript by order).

[2] The Court's citations to filed documents use the pagination assigned by the CM/ECF system.

[3] *Blue Cross & Blue Shield of Ala. v. CVS Health Corp.*, No. 20-CV-236 (WES-PAS); *Horizon Healthcare Servs., Inc. v. CVS Health Corp.,* No. 20-CV-458 (WES-PAS); *Highmark Inc. v. CVS Pharmacy, Inc.*, No. 20-CV-507 (WES-PAS); *Capital BlueCross v. CVS Health Corp.*, No. 20-CV-520 (WES-PAS); *CareFirst of Md., Inc. v. CVS Health Corp.*, No. 21-CV-223 (WES-PAS).

The core issue in the underlying litigation is whether CVS should have charged plan members and payors the price it charged members of its loyalty program or whether it should have charged the cash price. (Movant's Mem. Supp. Mot. Quash 10; Mot. Hr'g Tr. 27:14–16.) Put another way, the issue is whether the price CVS charged to Prime's pharmacy clients, the "usual and customary" price of a drug, should be the loyalty program price or the cash price. The price a pharmacy submits to a pharmacy benefit manager is called the "usual and customary" price, and the definition of that term is typically defined in the contract between the pharmacy and the pharmacy benefit manager. (*See* Geyerman Decl. ¶ 5, Ex. A ¶ 4, Dkt. No. 23-1). Relevant to this dispute, CVS subpoenaed Prime for documents that CVS believes tend to show Prime considered the usual and customary price to be the cash price, not the price CVS offered to customers in its loyalty program. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 10; *see, e.g.*, Geyerman Decl., Exs. A, B, Dkt. Nos. 23-1, 23-2.)

Prime objected to the subpoena in writing, and the parties negotiated its scope for months. (McCalmont Decl. I ¶¶ 4, 7, 10, Ex. B, Dkt. No. 4-2; Geyerman Decl. ¶ 14.) CVS claims that it "continually narrowed" the scope of its requests during negotiations. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 11–12.) When negotiations ended, Prime filed a motion to quash the subpoena as unduly burdensome and requested that the Court shift its costs of further compliance with the subpoena to CVS. (McCalmont Decl. I ¶ 10; Movant's Mot. Quash, Dkt. No. 1; Movant's Mem. Supp. Mot. Quash 1–2, Dkt. No. 3). On September 29, 2022 this Court held a motions hearing to address Prime's Motion to Quash and CVS's Motion to Compel. (Hr'g Mins., Dkt. No. 34.)

3

## LEGAL STANDARD

In civil cases, parties can discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party seeking discovery has the burden of making a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. Apr. 26, 2021) (citing *Hofer v. Mack Trucks*, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

But this broad disclosure standard is not boundless; parties can discover only that information which is "proportional to the needs of the case," considering "the importance of the issues," "the amount in controversy," "the parties' relative access to relevant information," their resources, how important the discovery is in resolving the issues, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### A. The "Undue Burden" Standard to Quash a Subpoena

A party can subpoena a non-party for relevant and proportional information, so long as the party "take[s] reasonable steps to avoid imposing undue burden or expense" on the non-party. Fed. R. Civ. P. 45(d)(1). Non-parties can object to the subpoena in writing and can also file a motion to quash or modify the subpoena in the district where compliance is required. Fed. R. Civ. P. 45(d)(2)(B), (d)(3). The court must quash a subpoena if it finds

that it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The person moving to quash or modify the subpoena has the burden of showing the subpoena subjects them to an undue burden. *Cutsforth, Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 12-CV-1200 (SRN/LIB), 2017 WL 11486322, at *3 (D. Minn. Mar. 15, 2017); *see also Abhe & Svoboda, Inc. v. Hedley*, No. CV 15-1952 (WMW/BRT), 2016 WL 11509914, at *3 (D. Minn. Mar. 15, 2016) ("[a] party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment)). Boilerplate objections will not support a finding of undue burden. *See Paisley Park Enters., Inc. v. Boxill*, No. 17-CV-1212 (WMW/TNL), 2019 WL 1036059, at *4 (D. Minn. Mar. 5, 2019).

In deciding whether a subpoena poses an undue burden, courts consider several factors, including "(1) relevance; (2) the need for the discovery; (3) how broadly the requests are framed; (4) the time period covered by the subpoena; (5) how particularly the subpoena describes the documents sought; (6) the burden imposed; and (7) that the recipient is a non-party to the litigation." *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-4839 (SRN/KMM), 2018 WL 3019899, at *3 (D. Minn. June 18, 2018); *see also Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (applying the first six factors of the test to a non-party). Relevance is a threshold factor, meaning it must be satisfied before any other factors can be considered. Fed. R. Civ. P. 26(b)(1); *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)

("[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action. . . .").

### B. The "Significant Expense" Standard to Shift Costs of Compliance

If a non-party does not comply with a subpoena, the party that served the subpoena can file a motion to compel, again in the district where compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(i). If the court orders compliance with the subpoena, it must protect the non-party from "significant expense" in complying. Fed. R. Civ. P. 45(d)(2)(B)(ii). Non-parties are typically required to pay the costs of complying with a subpoena for documents. *Paisley Park Enters., Inc.*, 2019 WL 1036059, at *5; *Cedar Rapids Lodge & Suites, LLC*, 2018 WL 3019899, at *2. Whether compliance poses a significant expense is a fact-specific analysis, and courts consider three factors: "(1) the recipient's interest in the outcome of the case; (2) whether the recipient can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance." *W. Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-CV-1445 (DSD/ECW), 2019 WL 8014512, at *3 (D. Minn. Nov. 22, 2019) (quoting *Paisley Park Enters., Inc.*, 2019 WL 1036059, at *5). If a non-party shows that compliance would result in significant expense, it can shift costs to the party which served the subpoena. *Cedar Rapids Lodge & Suites, LLC*, 2018 WL 3019899, at *2; *see also Forth v. Walgreen Co.*, No. 12-MC-7 (MSM/PAS), 2020 WL 4569501, at *2–3 (D.R.I. Aug. 7, 2020) (denying request to shift costs in similar case).

## ANALYSIS

There are two motions before the Court, containing a total of three distinct issues. First, Prime's Motion to Quash asks the Court to quash CVS's Request for Production

("RFP") Two, which demands "[e]ach response from [Prime] to any request for proposal from a Plaintiff concerning a contract for pharmacy benefit management services during the Relevant Time Period [September 1, 2006 to the present]." (Movant's Mem. Supp. Mot. Quash 6; McCalmont Decl. I Ex. A at 13.) Second, the Motion to Quash further requests that the Court shift the future cost of its subpoena compliance to CVS, along with the costs of filing the motion itself. (Movant's Mem. Supp. Mot. Quash 1–2.) Third, CVS's motion asks the Court to require Prime to produce documents in response to CVS's RFP 16, which demanded "[a]ll [d]ocuments, including [c]ommunications, concerning" the lawsuit. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 7; McCalmont Decl. I Ex. A at 15.) The Court takes each of these issues in turn, denying Prime's motion to quash and shift costs but granting CVS's motion to compel.

### A. Prime's Motion to Quash

The Court denies Prime's Motion to Quash because Prime has neither shown how RFP Two imposes an "undue burden" on Prime, nor explained how CVS's other requests for production will force Prime to bear "significant expense." *See Cedar Rapids Lodge & Suites, LLC*, 2018 WL 3019899, at *2–3.

### i. RFP Two

As the moving party, Prime must show that compliance with RFP Two would be an undue burden, which this Court assesses through the lens of the seven factors listed in *Cedar Rapids Lodge & Suites*. 2018 WL 3019899, at *3. While CVS addresses RFP two to a non-party and it covers a long period of time, the Court concludes that the remaining

7

five factors in the test—relevance, need, burden, particularity, and breadth—weigh in favor of CVS.

The relevance factor weighs in favor of CVS. Prime argues that RFP Two will generate mostly irrelevant documents. (Movant's Mem. Supp. Mot. Quash 7.) To attempt to prove its point, Prime ran CVS's search terms against the 1,920 documents it collected related to the request and found that only 236 documents contained those terms.[4] (*Id.* at 7–8.) At the motions hearing, Prime argued that if the Court requires it to disclose anything, it should be only those 236 documents, redacted for irrelevant and sensitive information. (Mot. Hr'g Tr. 11:17–12:1.) Counsel for CVS replied that CVS would accept the 236 documents, but argued it was entitled to them without redaction. (Mot. Hr'g Tr. 23:10–21.) Counsel for Prime then said that Prime was not conceding that the 236 documents were responsive and relevant, and reiterated Prime's interest in reviewing the documents for relevance and sensitive material before disclosing them. (Mot. Hr'g Tr. 36:25–37:24.)

Again, the dispute in the underlying litigation is whether the usual and customary price should be the cash price or the loyalty program price. Prime's position on this

---

[4] At the motions hearing, counsel for Prime clarified that CVS did not offer these search terms specifically for RFP Two. (Mot. Hr'g Tr. 5:7–6:21.) CVS provided search terms to cover all sixteen requests, and from those Prime selected terms it believed were related to what CVS was seeking in RFP Two, then ran those terms against the documents they identified as potentially responsive to RFP Two. (*Id.*) Prime ran this analysis to try to show the Court how little relevant information there was to discover in response to RFP Two. While this exercise is imaginative, the Court does not find it informative because the search terms Prime used were not drafted to locate documents within the scope of RFP Two, but to help locate documents for all RFPs. That said, the Court considers that the maximum scope of potential production responsive to RFP Two, by agreement of the parties, is now limited to the 236 documents described at the motions hearing.

question is relevant because Prime was the pharmacy benefit manager for several of the Plans, and discussions Prime had with the Plans regarding the "usual and customary price" would be likely to make one interpretation of the term more likely than the other. CVS anticipates that Prime employees will testify for the Plans in the underlying suit, and stresses that Prime's documents will be "very important at depositions and at trial," where employees will be asked about Prime's position on whether the price offered to a member of a loyalty program should be the usual and customary price that is submitted to the pharmacy benefit manager. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 17–18.) The relevance factor weighs strongly in favor of CVS.

The need factor weighs in favor of CVS. Prime argues that CVS seeks information that is available from the Plans. (Movant's Mem. Supp. Mot. Quash 8–9.) CVS retorts that CVS has "definitely" asked for the documents from the Plans and has "received some." (Resp'ts' Mem. Supp. Cross-Mot. Transfer 25; Mot. Hr'g Tr. 22:2–22.) CVS adds that the Federal Rules of Civil Procedure do not require it to ask only one entity for discovery; different sources of information have different document retention policies, justifying what at first may seem to be duplicative requests. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 25; Mot. Hr'g Tr. 22:23–25.) One company may keep what another company throws away. Because CVS has not received many documents responsive to RFP two from the Plans, it has need of the discovery. (Geyerman Decl. ¶ 10; Tr. 22:2–22) The need factor weighs in favor of CVS.

The burden factor weighs in favor of CVS. Prime identified 1,920 documents possibly responsive to RFP Two and identified a subset of 236 documents that contained

one or more of CVS's search terms. (McCalmont Decl. I ¶ 19.) These are not staggering numbers of documents to review. Prime's greater claim of burden seems to be that RFP Two requires it to disclose the "elaborate documents that outline Prime's business model, pricing strategies, and other details about what gives Prime an edge in a crowded PBM marketplace," to CVS, which owns a direct competitor to Prime. (Movant's Mot. Quash at 6–7 (citing Fed. R. Civ. P. 45(d)(3)(B)(i)).) The existing protective order allows parties and non-parties to designate documents as "Highly Confidential – Outside Counsel's Eyes Only." (*See* Geyerman Decl. Ex. L at 2, 5, Dkt. No. 23-12.) However, at the motions hearing, Prime explained that it found the protective order inadequate because it does not prevent CVS's outside counsel from disclosing information to experts who may be affiliated with competitors. (Mot. Hr'g Tr. 10:13–22.) However, Prime acknowledged that if the Court ordered production, it would address concerns about the protective order to the federal district court in Rhode Island, which issued the order in the first instance. (Mot. Hr'g Tr. 11:1–11:09.) Thus, the burden of compliance, in this Court's view, is only that of disclosing the 236 documents CVS has said it will accept, safeguarded by whatever protective order the court in Rhode Island may issue. This burden is not so great as to weigh in favor of quashing the subpoena under Fed. R. Civ. P. 45(d)(3)(B)(i), especially given the relevance of these documents and CVS's need.

The particularity and breadth factors weigh in CVS's favor as well. RFP Two seeks "each response" to requests for proposals "from a Plaintiff" [one or more of the Plans] in this litigation. Prime's objection that the meaning of the term "response" is vague is not well taken. (*See* McCalmont Decl. I, Ex. B at 3.) The Court understands that CVS is asking

10

Prime to disclose any replies to the Plans which requested proposals from Prime. *See Response*, Merriam Webster, https://www.merriam-webster.com/dictionary/response (last visited Nov. 7, 2022) ("something constituting a reply or a reaction"). CVS is asking for a particular kind of document, sent in particular business communications. This request is sufficiently particular. Prime claims that the request is overbroad because when it ran the search terms against the 1,920 documents it collected, only 236 documents contained those terms. (Movant's Mem. Supp. Mot. Quash 7–8.) Now that CVS has said that it will accept the 236 documents, this objection loses much of its weight. (*See* Hr'g Tr. 23:10–22.)

  The two factors in Prime's favor—its non-party status and the number of years for which records are sought—are not weighty. Prime is technically a non-party in the underlying litigation but the Court gives this factor less weight in this case than it might otherwise because Prime is not a disinterested non-party, as is described more fully below in the cost shifting analysis. The non-party factor weighs in favor of Prime, but only slightly. The final factor, the sixteen-year time period the subpoena covers, also weighs in favor of Prime, but it is not enough to outweigh the other considerations. The Court acknowledges that other courts in this circuit have found subpoenas with similar time spans to be unduly burdensome. *See Par Pharms., Inc. v. Express Scripts Specialty Distrib. Servs., Inc.*, No. 17-MC-510 (RLW), 2018 WL 264840, at *2 (E.D. Mo. Jan. 2, 2018) (finding subpoena requesting 15 years of confidential patient records to be unduly burdensome); *Nachurs Alpine Sols., Corp. v. Nutra-Flo Co.*, No. 15-CV-4015 (LTS), 2017 WL 1380460, at *4 (N.D. Iowa Apr. 17, 2017) (granting motion to quash on relevance grounds but noting that the scope of the subpoena for 17 years of sensitive company

documents would provide independent grounds). Nevertheless, the proportionality of a subpoena is specific to the facts of every case and the district courts are granted broad discretion in making pretrial discovery decisions. *Hari v. Childress*, No. 21-MC-66 (ECT/TNL), 2022 WL 1590701, at *2 (D. Minn. May 19, 2022) (quoting *Deluxe Fin. Servs. v. Shaw*, No. 16-cv-3065 (JRT/HB), 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017)). The time span of this subpoena and Prime's non-party status do not outweigh the other factors in this case, particularly the relevance of Prime's position on the core issue of the case and the limited burden of producing 236 documents.

In sum, Prime has not proven that compliance with RFP Two is unduly burdensome. CVS agrees it will accept the 236 documents without redactions, and Prime must produce them, subject only to a valid claim of privilege. (Mot. Hr'g Tr. 23:10–21.) If Prime requires a modified protective order before it will disclose the unredacted documents, it must seek it from the United States District Court for the District of Rhode Island.

  *ii.*  ***Shifting Cost of Prime's Compliance***

Prime argues that CVS should pay the costs of subpoena compliance because the search terms CVS wishes Prime to use return 64,529 documents, 95% of which Prime claims to be "false positives." (Movant's Mem. Supp. Mot. Quash 8–9; McCalmont Decl. I ¶¶ 12, 24.) Prime claims that CVS refuses to narrow the search parameters. (Movant's Mem. Supp. Mot. Quash 9–10.) At the motions hearing, counsel for Prime stated that Prime has already spent $50,000 complying with the subpoena and expects to spend $100,000 more. (Mot. Hr'g Tr. 12:6–23.) Prime seeks costs and fees associated with bringing the Motion to Quash. (Movant's Mem. Supp. Mot. Quash at 13.) CVS argues that there is no

reason to alter the default rule that a recipient of a subpoena is expected to pay the cost of compliance, especially because Prime "is not a disinterested party," and was "substantially involved in the underlying transaction[s]." (Resp'ts' Mem. Supp. Cross-Mot. Transfer 18–20.)

To determine whether cost shifting is appropriate here, the Court considers (1) Prime's interest in the underlying case's outcome, (2) whether Prime can better bear the costs of compliance with the subpoena than CVS, and (3) the public importance of the underlying case. *W. Publ'g Corp. v. LegalEase Sols., LLC*, No. 18-CV-1445 (DSD/ECW), 2019 WL 8014512, at *3 (D. Minn. Nov. 22, 2019); *see also Cornell v. Columbus McKinnon Corp.*, No. 13-CV-02188-SI, 2015 WL 4747260, at *2 (N.D. Cal. Aug. 11, 2015) (quoting *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (recalling that this test was previously used to determine whether to shift costs before the current version of Rule 45 made cost shifting mandatory, but that some courts now use the test to determine whether costs are "significant."). Because neither party argued that the underlying case is of public importance, the Court considers only the first two factors. (*See* Resp'ts' Mem. Supp. Cross-Mot. Transfer 21 n.14 ("[W]hether the litigation is of public importance[] does not come into play in this commercial litigation.").)

First, Prime is interested in this case, even though it is not a party and claims that it will not benefit financially if the Plans win their suit. (Mot. Hr'g Tr. 8:21–25.) The Plans are Prime's part owners and clients, Prime was the pharmacy benefit manager for several of the transactions at issue in the case, and Prime is facing impleader liability in another case on similar issues. (Mot. Hr'g Tr. 8:7–9:10, 19:17–21); Third-Party Complaint Against

13

Prime Therapeutics LLC for Contribution and Indemnification, *BCBSM, Inc. v. Walgreen Co.*, No. 1:20-CV-1853 (N.D. Ill. July 26, 2021), Dkt. No. 152 at 73. Defendant CVS itself owns a pharmacy benefit manager in direct competition with Prime. (Mot. Hr'g Tr. 10:4–9.) In a case where Walgreens sought discovery from CVS Caremark—the pharmacy benefit manager CVS owns—about the same core issue in the underlying case here, the court in Rhode Island found that CVS had an interest in the litigation.

> In targeting Caremark with a Fed. R. Civ. P. 45 subpoena, Plaintiffs were aware that they were not pulling a non-involved third party into a case to which it was a stranger. Not only is Caremark, as a PBM for one of the Plaintiffs, directly involved with Walgreens regarding the matters in issue, but Caremark and its parent/affiliate, CVS Health Corporation and other CVS entities, have also been sued for essentially the same practice with respect to their own U&C [usual and customary] practices.

*Forth v. Walgreen Co.*, No. 120-MC-7 (MSM/PAS), 2020 WL 4569501, at *1 (D.R.I. Aug. 7, 2020) (footnote omitted).  The court in that case refused to shift the costs of CVS's compliance with Plaintiff's subpoena, partly because CVS had a "well-established" interest in the case. *Id.* at *3. The Court finds that Prime also has a "well-established" interest in the underlying litigation here, which weighs against cost shifting.

Second, Prime has not shown that CVS can better bear the costs of its compliance with the subpoena. At the motion hearing, counsel for Prime argued that because CVS is a bigger company, it is better able to bear the future costs of its own subpoena, which would be approximately $100,000. (Mot. Hr'g Tr. 14:1–15.) Prime offered no evidence to support this conclusion, beyond CVS's position on the Fortune 500 list.[5]  (*Id.*); *see Hyundai Motor*

---

[5] CVS, for its part, has noted that Prime is the second largest company in Minnesota. (Resp'ts' Mem. Supp. Cross-Mot. Transfer 14–15.)

14

*Am., Inc. v. Pinnacle Grp., LLC*, No. SACV 14-0576-CJC (JPRx), 2016 WL 6208313, at *2 (C.D. Cal. Apr. 20, 2016) ("Mobis has provided the Court with no information concerning its book of business that would enable the Court to find that the $12,087.70 in costs it is requesting . . . is a 'significant' expense for it."). Counsel for CVS retorted that Prime and CVS are both large companies, and a six-figure cost of compliance was not necessarily a significant expense for a "huge" company. (Mot. Hr'g Tr. 33:7–34:2 (referencing *Cornell v. Columbus McKinnon Corp.*, No. 13-CV-02188-SI, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015).) Prime, which has the burden of proof on this point, did not explain why—beyond their claim that CVS is the larger company—CVS can better bear the costs of Prime's continued subpoena compliance. This reasoning, applied to every case, would mean that the larger company would *always* win on this factor in the test. The analysis is not that simple. Even assuming CVS is the larger company, other factors suggest that Prime can bear the cost just as well as CVS. Prime itself is a large company. (*See* Geyerman Decl. Ex. C, Dkt. No. 23-3 (producing screenshots of Prime's website tracing Prime's history "from a small pharmacy benefit manager (PBM) to a leading total drug management enterprise"); Resp'ts' Mem. Supp. Cross-Mot. Transfer 19 (claiming that Prime is Minnesota's second largest private company)). Complying with this subpoena satisfies Prime's obligations for five consolidated cases. (Order 1, Dkt. No. 31.) Lastly, the content of the subpoena overlaps with material Prime has produced for other litigation (or is currently producing). (Geyerman Decl. ¶ 13; Mot. Hr'g Tr. 14:16–25.) Prime cannot show that CVS can better bear Prime's compliance expenses simply by arguing CVS is the larger company.

Prime cites *Rochester Drug Co-Operative v. Mylan Inc.*, as an example of the kind of cost shifting it seeks. No. 22-MC-7, 2022 WL 1598377 (D. Minn. May 20, 2022); (Movant's Mem. Supp. Mot. Quash 12). That case is readily distinguishable. The burden of production in that case was significant in part because of how the non-party's predecessors archived documents. *Rochester Drug Co-Operative,* 2022 WL 1598377 at *11. No party has raised such concerns in this case. Additionally, the non-party in *Rochester Drug Co-Operative* was a victim of the alleged price inflation scheme. *Id.* at *12. Because Prime is an interested non-party and has not shown that CVS is better able to bear the burden of their production costs, Prime must bear its own costs.

### B. Motion to Compel Production of Documents in Response to RFP 16

The Court grants CVS's Motion to Compel Prime to respond to RFP 16, which demands "All Documents, including Communications, concerning this Action." (McCalmont Decl. I Ex. A at 9.) CVS and Prime have two disputes about RFP 16. First, CVS wants Prime to review and produce the results of a keyword search Prime ran in spring 2022. Prime is willing to disclose the keyword search results, but only if the costs of production are shifted to CVS. (Hr'g Tr. 18:11–24.) Second, CVS wants Prime to disclose communications that Prime employees may have had with the Plans' employees, a request CVS made more recently. (Hr'g Tr. 17:6–18:11.) Prime must disclose, and pay the costs of disclosing, both sets of material. In the first set, CVS seeks relevant and proportional discovery which does not impose a significant expense on Prime. In the second set, Prime has already reviewed the responsive material and needs only to produce a privilege log for CVS's review.

16

### i. *Original Keyword Searches*

Prime argues that it created a set of search terms to locate documents responsive to RFP 16, ran those terms against the documents it had collected from the sources CVS requested, and came up with no hits. (Movant's Mem. Opp'n Cross-Mot. Transfer 8–9, Dkt. No. 29. *But see* McCalmont Decl. I, Ex. C at 2, Dkt. No. 4-3 (describing a search term limited to the time the first lawsuit was filed and April 8, 2022 resulting in 2,451 hits).) At the motion hearing, counsel for Prime reported that after briefing closed, counsel for CVS asked a question about a previously discussed search term that was potentially responsive. (Mot. Hr'g Tr. 18:12–15.). Until that point, Prime's counsel reports, Prime believed that CVS was not interested in that search term, and it now argues that the Court should shift the cost of reviewing the results of that search to CVS. (*Id.*; Mot. Hr'g Tr. 35:24–36:20.) CVS claims that it is entitled to the 2,451 documents produced by the search term and referenced in Exhibit C to Ms. McCalmont's declaration. (Mot. Hr'g Tr. 34:6–35:2.)

Because RFP 16 requests relevant and proportional discovery, Prime must review the 2,451 documents mentioned in the email in Exhibit C to Ms. McCalmont's declaration, disclose those which are responsive, and produce a privilege log. Documents and communications about the underlying litigation are relevant because they are reasonably likely to contain information, facts, or opinions about the claims and defenses at play in the underlying litigation. CVS is entitled to see those insights which are not privileged. Prime's burden of production is proportional to the size of this litigation, which consolidates five separate lawsuits between large businesses. Again, courts determine proportionality by considering several factors, including: "the importance of the issues at

17

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Here, CVS and Prime are both well resourced, but Prime has better access to its own documents than does CVS. The relevant period for the specific search term at issue is even shorter than that listed in the subpoena: when Prime originally ran the search term, it included a "date limitation…of May 1, 2020, since the earliest lawsuit wasn't filed until the end of May 2020." (McCalmont Decl. I, Ex. C at 2.) Reviewing the 2,451 results at issue is an even less burdensome request than the request to review 64,259 records, which the Court found not to be unduly burdensome or generating significant expense. Thus, this request does not itself create a significant expense requiring cost shifting.

### ii. *Communications Between Prime Employees and Employees of the Plans*

CVS alleges that employees of the Plans have been contacting their counterparts at Prime seeking information that "Plaintiffs may use in calculating damages." (Resp'ts' Mem. Supp. Cross-Mot. Transfer 22–23.) In its moving papers, CVS claimed that counsel for Prime said they would locate these communications but have failed to do so. (*Id.*). In response, Prime claimed that it attempted to locate this information, and sought information from CVS and the Plans to narrow its search. (Movant's Mem. Opp'n Cross-Mot. Transfer 8–9.) Prime argued that, without receiving information from the Plans or CVS, finding the documents would be an "enormous" burden on Prime. (*Id.* at 10.) At the motions hearing, counsel for Prime represented that the only documents responsive to this original request

18

were privileged, and that it would produce a privilege log. (Mot. Hr'g Tr. 17:10–24.) While it appears from the record that this sub-issue is resolved, to avoid any ambiguity the Court orders Prime to submit a privilege log.

## CONCLUSION

Prime has not shown how complying with CVS's RFPs would cause it undue burden or significant expense. CVS has, however, shown that it requested relevant and proportional discovery in RFP 16, but has not received it.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Prime's Motion to Quash a Subpoena is **DENIED** in full. Prime shall comply with RFP Two by disclosing the 236 documents it identified as potentially relevant, without any redactions and subject only to review for privilege. If Prime believes the Rhode Island protective order is inadequate, it will approach the United States District Court for the District of Rhode Island for relief. If it so chooses, Prime may designate these documents as "Highly Confidential – Outside Counsel's Eyes Only." (*See* Geyerman Decl. Ex. L at 5, Dkt. No. 23-12.) Prime will produce a privilege log, if necessary. Prime will bear the costs of compliance with the subpoena. Prime will comply within 30 days of the date of this Order.

2. CVS's Motion to Compel Production of Documents is **GRANTED**. Prime shall review the 2,451 documents it identified as potentially responsive, disclose any

that are responsive, and produce a privilege log for any documents it withholds based on privilege. Prime shall comply within 30 days of the date of this Order.

3. The Motion Hearing transcript shall be made public on December 12, 2022.

Date: December 5, 2022

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge